837 F.2d 33
 1988 A.M.C. 880
 CHINA TRADE AND DEVELOPMENT CORPORATION, Chung Hua Trade and
Development Corporation (U.S.A.), and Soybean
Importers Joint Committee of the
Republic of China, Plaintiffs-Appellees,
v.
M.V. CHOONG YONG, her engines, boilers, etc., in rem, and
Ssangyong Shipping Co., Ltd., Defendants,
Ssangyong Shipping Co., Ltd., Defendant-Appellant.
 No. 260, Docket 87-7556.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 11, 1987.
Decided Sept. 11, 1987.
Opinion Filed Dec. 31, 1987.
 
 Alan S. Loesberg, New York City (Hill, Rivkins, Carey, Loesberg, O'Brien, & Mulroy, Robert E. Daley, Michael J. McWeeney, New York City, of counsel), for plaintiffs-appellees.
 Richard A. Corwin, New York City (Walker & Corsa, New York City, of counsel), for defendant-appellant.
 Before PRATT, MAHONEY, Circuit Judges, and BRIGHT, Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.
 GEORGE C. PRATT, Circuit Judge:
 
 
 1
 Following oral argument this court reversed an order of the United States District Court for the Southern District of New York and vacated the injunction which had permanently enjoined Ssangyong Shipping Co., Ltd. ("Ssangyong") from proceeding in the courts of Korea with its action against China Trade & Development Corp., Chung Hua Trade & Development Corp. and Soybean Importers Joint Committee of the Republic of China (collectively, "China Trade").
 
 
 2
 The district court had granted the injunction because it found that (1) the parties in the Korean action are the same as the parties in this action; (2) the issue of liability raised by Ssangyong in the Korean court is the same as the issue of liability raised here; (3) the Korean litigation would be vexatious to the plaintiffs in the United States action, which was commenced first; and (4) allowing the Korean litigation to proceed would result in a race to judgment.
 
 
 3
 Because no important policy of the forum would be frustrated by allowing the Korean action to proceed, and because the Korean action poses no threat to the jurisdiction of the district court, we conclude that the interests of comity are not overbalanced by equitable factors favoring an injunction, and we hold that the district court abused its discretion when it enjoined Ssangyong, a Korean corporation, from proceeding in the courts of Korea. We therefore reverse.
 
 BACKGROUND
 
 4
 In 1984 China Trade sought to import 25,000 metric tons of soybeans into the Republic of China from the United States. Ssangyong, a Republic of Korea corporation, agreed to transport the soybeans on its ship the M.V. CHOONG YONG. The vessel ran aground, however, and as China Trade contends, the soybeans, contaminated by seawater, became virtually valueless.
 
 
 5
 The litigation leading to this appeal began in 1985 when attorneys for China Trade attached the M.V. BOO YONG, another vessel owned by Ssangyong, which was then located in the Central District of California. To release the vessel, the parties agreed that China Trade would lift the attachment and discontinue the California action and, in exchange, Ssangyong would provide security in the amount of $1,800,000, the approximate value of the attached vessel, and would appear in an action to be commenced by China Trade in the Southern District of New York and waive any right to dismissal of the new action on the ground of forum non conveniens.
 
 
 6
 China Trade then commenced this action in the southern district seeking $7,500,000 in damages from Ssangyong for failure to deliver the soybeans. Both parties proceeded to prepare the case for trial through extensive discovery that has included both depositions and document production that required trips to Korea and to the Republic of China. Trial was scheduled to begin in September 1987.
 
 
 7
 On April 22, 1987, while discovery was still progressing, Ssangyong's Korean attorneys filed a pleading in the District Court of Pusan, commencing an action, similar to our declaratory judgment action, which seeks confirmation that Ssangyong is not liable for China Trade's loss. Nearly two months later Ssangyong's New York counsel forwarded a copy of this pleading to counsel for China Trade. Immediately, and before taking any action in the district court of Pusan, China Trade moved by order to show cause in this action for an injunction against further prosecution of the Korean action.
 
 
 8
 To determine whether to enjoin the foreign litigation, the district court employed a test that has been adopted by some judges in the southern district. In American Home Assurance Corp. v. The Insurance Corp. of Ireland, Ltd., 603 F.Supp. 636, 643 (S.D.N.Y.1984), the court articulated two threshold requirements for such an injunction: (1) the parties must be the same in both matters, and (2) resolution of the case before the enjoining court must be dispositive of the action to be enjoined.
 
 
 9
 When these threshold requirements are met, five factors are suggested in determining whether the foregoing action should be enjoined: (1) frustration of a policy in the enjoining forum; (2) the foreign action would be vexatious; (3) a threat to the issuing court's in rem or quasi in rem jurisdiction; (4) the proceedings in the other forum prejudice other equitable considerations; or (5) adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment.
 
 
 10
 American Home Assurance, 603 F.Supp. at 643. See also Garpeg, Limited v. United States, 583 F.Supp. 789 (S.D.N.Y.1984).
 
 
 11
 Judge Motley found after a hearing that the two threshold requirements were met, since in both actions the parties and the issues of liability are the same. She then considered the additional five factors and found that the Korean litigation in this case would (1) be vexatious to the plaintiffs and (2) result in expense and a race to judgment. Considering these findings sufficient, the district court permanently enjoined Ssangyong's prosecution of the Korean action. This appeal followed.
 
 DISCUSSION
 
 12
 Ssangyong relies first on the ancient rule that the district court, sitting in admiralty, lacks the power to issue an injunction. See The Eclipse, 135 U.S. 599, 10 S.Ct. 873, 34 L.Ed. 269 (1890); Schoenamsgruber v. Hamburg American Line, 294 U.S. 454, 55 S.Ct. 475, 79 L.Ed. 989 (1935). China Trade acknowledges this rule but urges us to reconsider it. While some circuits have reconsidered and abandoned this traditional limit on the power of a court in admiralty (see e.g., Lewis v. S.S. Baune, 534 F.2d 1115 (5th Cir.1976); Pino v. Protection Maritime Insurance Company, Ltd., 599 F.2d 10 (1st Cir.), cert. denied, 444 U.S. 900, 100 S.Ct. 210, 62 L.Ed.2d 136 (1979)), this circuit has not yet considered an appropriate case in which to reexamine the rule. See Eddie S.S. Co. Ltd. v. P.T. Karana Line, 739 F.2d 37 (2d Cir.1984). Based upon our determination that an injunction should not have issued in this case in any event, we do not believe that this is an appropriate case in which to reconsider our traditional rule that courts in admiralty lack the power to grant injunctions. We therefore assume, but solely for the purposes of this appeal, that the district court in this case had the same power to issue an anti-suit injunction as it would have in a nonadmiralty case.
 
 
 13
 The power of federal courts to enjoin foreign suits by persons subject to their jurisdiction is well-established. U.S. v. Davis, 767 F.2d 1025, 1038 (2d Cir.1985); Laker Airways, Ltd. v. Sabena Belgian World Airlines, 731 F.2d 909, 926 (D.C.Cir.1984). The fact that the injunction operates only against the parties, and not directly against the foreign court, does not eliminate the need for due regard to principles of international comity, Peck v. Jenness, 48 U.S. (7 How.) 612, 625, 12 L.Ed. 841 (1849), because such an order effectively restricts the jurisdiction of the court of a foreign sovereign, U.S. v. Davis, 767 F.2d at 1038. Therefore, an anti-foreign-suit injunction should be "used sparingly", U.S. v. Davis, 767 F.2d at 1038, and should be granted "only with care and great restraint." Canadian Filters (Harwich) v. Lear-Siegler, 412 F.2d 577, 578 (1st Cir.1969); see Laker v. Sabena, 731 F.2d at 927; Compagnie Des Bauxites De Guinea v. Insurance Co. of N. Am., 651 F.2d 877, 887 (3rd Cir.1981). See also Garpeg Ltd., 583 F.Supp. at 798.
 
 
 14
 Concurrent jurisdiction in two courts does not necessarily result in a conflict. Laker v. Sabena, 731 F.2d at 926. When two sovereigns have concurrent in personam jurisdiction one court will ordinarily not interfere with or try to restrain proceedings before the other. Donovan v. City of Dallas, 377 U.S. 408, 412, 84 S.Ct. 1579, 1582, 12 L.Ed.2d 409 (1964), citing Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 466, 59 S.Ct. 275, 280, 83 L.Ed. 285 (1939); Laker v. Sabena, 731 F.2d at 926-27; Compagnie des Bauxites v. Insurance Co. of N. Am., 651 F.2d at 887. "[P]arallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other," Laker v. Sabena, 731 F.2d at 926-27, citing Colorado River Water Conservation District v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).
 
 
 15
 Since parallel proceedings are ordinarily tolerable, the initiation before a foreign court of a suit concerning the same parties and issues as a suit already pending in a United States court does not, without more, justify enjoining a party from proceeding in the foreign forum.
 
 
 16
 In general we agree with the approach taken by Judge Motley. She began by inquiring (1) whether the parties to both suits are the same and (2) whether resolution of the case before the enjoining court would be dispositive of the enjoined action. She apparently found that both of these prerequisites were met here. While there is some question as to whether the Korean courts would recognize a judgment of the southern district, it is not necessary to determine that question of Korean law because the injunction is deficient for another reason. Judge Motley found the necessary additional justification for this injunction in two of the five factors suggested in American Home Assurance Corp.: "vexatiousness" of the parallel proceeding to China Trade and a "race to judgment" causing additional expense. However, since these factors are likely to be present whenever parallel actions are proceeding concurrently, an anti-suit injunction grounded on these additional factors alone would tend to undermine the policy that allows parallel proceedings to continue and disfavors anti-suit injunctions. Having due regard to the interests of comity, we think that in the circumstances of this case two of the other factors suggested in American Home Assurance Corp. take on much greater significance in determining whether Ssangyong should be enjoined from proceeding in its Korean action: (A) whether the foreign action threatens the jurisdiction of the enjoining forum, and (B) whether strong public policies of the enjoining forum are threatened by the foreign action. See Laker v. Sabena, 731 F.2d at 927, 937.
 
 
 17
 A. Protecting Jurisdiction.
 
 
 18
 A long-standing exception to the usual rule tolerating concurrent proceedings has been recognized for proceedings in rem or quasi in rem, because of the threat a second action poses to the first court's basis for jurisdiction. Donovan v. City of Dallas, 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964), citing Princess Lida of Thurn & Taxis v. Thompson, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285. When a proceeding is in rem, and res judicata alone will not protect the jurisdiction of the first court, an anti-suit injunction may be appropriate.
 
 
 19
 Even in in personam proceedings, if a foreign court is not merely proceeding in parallel but is attempting to carve out exclusive jurisdiction over the action, an injunction may also be necessary to protect the enjoining court's jurisdiction. In the Laker litigation, for example, when the English Court of Appeal enjoined Laker's litigation of its claims against British defendants in a United States court under United States law, the United States district court, in order to protect its own jurisdiction, enjoined other defendants in the Laker action from seeking similar injunctions from the English Court of Appeal. Laker v. Sabena, 731 F.2d at 917-21.
 
 
 20
 In the present case, however, there does not appear to be any threat to the district court's jurisdiction. While the Korean court may determine the same liability issue as that before the southern district, the Korean court has not attempted to enjoin the proceedings in New York. Neither the Korean court nor Ssangyong has sought to prevent the southern district from exercising its jurisdiction over this case.
 
 
 21
 B. Important Public Policies.
 
 
 22
 An anti-suit injunction may also be appropriate when a party seeks to evade important policies of the forum by litigating before a foreign court. While an injunction may be appropriate when a party attempts to evade compliance with a statute of the forum that effectuates important public policies, an injunction is not appropriate merely to prevent a party from seeking "slight advantages in the substantive or procedural law to be applied in a foreign court", Laker v. Sabena, 731 F.2d at 931, n. 73.
 
 
 23
 The possibility that a United States judgment might be unenforceable in Korea is no more than speculation about the race to judgment that may ensue whenever courts have concurrent jurisdiction. Moreover, we cannot determine at this point whether a judgment of the United States court in an amount exceeding the 1.8 million dollar bond would be enforceable in Korea even if the Korean action were now enjoined. Should plaintiffs prevail, enforcement of any excess amount against Ssangyong in Korea may well require relitigation in the Korean courts of the issue of liability. In these circumstances, we are not persuaded that Ssangyong, the party seeking to litigate in the foreign tribunal, is attempting to evade any important policy of this forum.
 
 CONCLUSION
 
 24
 The equitable factors relied upon by the district court in granting the anti-suit injunction are not sufficient to overcome the restraint and caution required by international comity. Because the Korean litigation poses no threat to the jurisdiction of the district court or to any important public policy of this forum, we conclude that the district court abused its discretion by issuing the injunction. Reversed.
 
 BRIGHT, Senior Circuit Judge, dissenting:
 
 25
 I dissent.
 
 
 26
 The district court determined this case to be an appropriate one for issuance of an injunction. Judge Motley, in an unpublished opinion, wrote:
 
 
 27
 It is this court's view that the instant case is an "appropriate" one [for an injunction]. The Second Circuit deemed that Eddie [Eddie S.S. Co. v. P.T. Karana Line, 739 F.2d 37 (2d Cir.), cert. denied, 469 U.S. 1073, 105 S.Ct. 568, 83 L.Ed.2d 508 (1984) ] was not an appropriate case to depart from the general principle [that a federal court sitting in admiralty lacks the power to issue an injunction] because in that case, the court decided that the equitable relief requested should not have been granted by any court. The Second Circuit suggested that the attachment order which the plaintiffs in that case requested be enjoined "seem[ed] to have no impact on the New York proceedings" in question in that case. In comparison, this court finds that the injunction requested in this case is closely bound to the proceedings scheduled to take place in this court, and should be issued by this court. Thus, this court is presented with an appropriate case under which to depart from the rule that a court sitting in admiralty cannot issue an injunction.
 
 
 28
 China Trade and Dev. Corp. v. M.V. Chong Yong, No. 85 Civ. 8794, slip op. at 7-8 (S.D.N.Y. July 2, 1987). I agree with this reasoning.
 
 
 29
 In its analysis of whether equitable considerations justified the issuance of an injunction, the court found the crucial facts relating to injunctive relief as follows:
 
 
 30
 Plaintiffs in this action, Chunghua Trade and Development Corp., China Trade and Development Corp. and Soybean Importers Joint Committee of the Republic of China purchased 25,000 metric tons of U.S. soybeans in November of 1984. Subsequently, plaintiffs contracted with defendant, Ssangyong Shipping Co. Ltd. to transport the cargo from Tacoma, Washington, where it was loaded to two ports in Taiwan. While in transit, the ship carrying the soybeans went aground. Plaintiffs allegedly sustained between $6,000,000 and $7,000,000 of damages to its cargo. Plaintiffs claim this grounding was caused by an unseaworthy engine, while defendants contend that it was as a result of an error in navigation.
 
 
 31
 Ssangyong sold the wreck, collecting $11,000,000 from its underwriters. Soon thereafter, plaintiffs attached another of the defendant's ships, the M V BOO YONG, in order to obtain security for damages which might be assessed against the defendant company. The ship was attached in California. The defendant agreed to appear in this action in the Southern District of New York and post security in the amount of $1,800,000 in return for the release of the M V BOO YONG.
 
 
 32
 Discovery for the case proceeded and was completed. Trial was scheduled by this court, without objection, for September 21, 1987. Ssangyong, however, some 2 1/2 years after [the accident and 1 1/2 years after] this action was begun, then proceeded to file a suit in Pusan Court of the Republic of Korea, naming the same parties to the action, as well as the same issues. Plaintiffs herein move to enjoin the defendant from proceeding with that action.
 
 
 33
 The court finds as facts that the parties to the two actions are the same and that resolution of the action before this court would be dispositive of the Korean action.
 
 
 34
 The court also finds that the Korean action would be vexatious to plaintiffs, and that the Korean action could potentially frustrate the proceedings before this court.
 
 
 35
 Id. at 2-3. Those facts receive ample support from the record, and I accept them as true for the purposes of this appeal.
 
 
 36
 In addressing its power, as well as the discretionary factors in the issuance of an injunction barring a litigant from pursuing a simultaneous remedy in a foreign forum, the district judge stated:
 
 
 37
 The first question that this court must address is whether it should grant an injunction enjoining the defendants from proceeding with their lawsuit in Korea. It is recognized that courts have the power to enjoin litigants from pursuing simultaneous contests in a foreign forum. Seattle Totems Hockey Club, Inc. v. National Hockey League, 652 F.2d 852 (9th Cir.1981), cert. denied, 457 U.S. 1105, 102 S.Ct. 2902, 73 L.Ed.2d [1313]; American Home Assurance Co. v. Insurance Co. of Ireland Ltd., 603 F.Supp. 636 (S.D.N.Y.1984) (Carter, J.); Harvey Aluminum v. American Cyanamid Co., 203 F.2d 105, 108 (2d Cir.1953); Garpeg Ltd. v. United States, 583 F.Supp. 789, 798 (S.D.N.Y.1984) (Sweet, J.). However, comity militates against granting such relief, since the issuance of an injunction can deprive the other country in which the suit is instituted of its sovereignty to some extent. Laker Airways v. Sabena, Belgian World Airlines, 731 F.2d 909 (D.C.Cir.1984). Defendants rely heavily on Laker, which suggests that "The fundamental corollary to concurrent jurisdiction must ordinarily be respected: parallel proceedings in the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other." Id. Laker, however, also emphasizes that if a substantial amount of time has elapsed between the commencement of the two actions, equitable principles make it more appropriate to enjoin the second action. Id. at 929 n. 63. In the instant case, almost 2 1/2 years elapsed before the defendants brought suit in Korea, making this an appropriate case to issue an injunction even under the strict standard required by Laker.
 
 
 38
 Courts in the Southern District of New York have not fully accepted the stringent Laker standard, and have adopted a two-pronged test in order to determine whether a court should issue an injunction enjoining a foreign proceeding. The test set forth in American Home Assurance Co. v. Insurance Co. of Ireland Ltd., 603 F.Supp. 636 is as follows. First, the parties must be the same. It is undisputed that this prong of the test is satisfied in the instant case. Second, the resolution of the first action must be dispositive of the action to be enjoined. In the case at bar, plaintiffs have shown that they have raised the same issue of defendants' liability as defendants have raised in the Korean action. It appeared at oral argument that defendants do not even dispute that the same issues are to be tried in both courts. The second prong of the test is, therefore, satisfied.
 
 
 39
 According to American Home Assurance, "[w]hen these threshold requirements are met, five factors are suggested in determining whether the foreign action should be enjoined: (1) frustration of a policy in the enjoining forum; (2) the foreign action would be vexatious; (3) a threat to the issuing court's in rem or quasi in rem jurisdiction; (4) the proceedings in the other forum prejudice other equitable considerations; or (5) adjudication of the same issue in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment." Id. at 643. Two of the five factors seem to apply to the instant case. Clearly the action in Korea would be vexatious to the plaintiffs, considering that defendants waited 2 1/2 years to commence the action in that forum and had never made a motion, mention or pled forum non conveniens with regard to the proceeding in the United States. Moreover, it appears that defendants would like to get what would amount to a declaratory judgment from the Korean court stating that they are not liable for the damages incurred by plaintiff, thus rendering a judgment by this court in favor of plaintiff unenforceable in that locale. Such a result could frustrate the outcome of the proceeding in the United States. It seems as if a race to judgment between the two forums would necessarily result if defendants were allowed to pursue the lawsuit in Korea. Furthermore, the second action in Korea will force plaintiffs to pursue a course of action half way around the world, forcing plaintiffs to incur great expense. Thus, there is a strong argument for this court to issue an injunction against the defendants.
 
 
 40
 Id. at 3-6. I approve of this analysis and would affirm the grant of the injunction in this case.
 
 
 41
 In examining the record, I also note several additional factors which would justify restricting Ssangyong Shipping from seeking to affect the New York litigation by proceeding with a declaratory judgment action in Korea.
 
 
 42
 1. Ssangyong has agreed to litigating the damage action in the Southern District of New York. That litigation will resolve the liability issues under provisions of the United States Carriage of Goods by Sea Act of 1936, 46 U.S.C. Sec. 1300, et seq. (1982). The same Act will underlie the liability determination in Korea.
 
 
 43
 2. The Korean action may serve only as a harassment to plaintiff and will multiply legal proceedings. Should the Korean courts absolve Ssangyong of responsibility for the cargo loss, that judgment, for want of personal jurisdiction over the ship or the parties or for other reasons, may not affect the action of the Southern District of New York in its proceeding. Should the courts of Korea find liability, the plaintiffs may, nevertheless, be required to proceed with a full trial in New York, or the case in the Southern District of New York may already have been concluded.
 
 
 44
 It seems to me that in this day of exceedingly high costs of litigation, where no comity principles between nations are at stake in resolving a piece of commercial litigation, courts have an affirmative duty to prevent a litigant from hopping halfway around the world to a foreign court as a means of confusing, obfuscating and complicating litigation already pending for trial in a court in this country. This is especially true when that court has been processing the case for almost two years and has acquired personal jurisdiction over the parties and subject matter jurisdiction over the claim.
 
 
 45
 I perceive no abuse of a trial judge's discretion in the ruling of Judge Motley. I would affirm the grant of the injunction in this case.