**In re MILLENIUM SEACARRIERS, INC. Debtor,**

**Jamaica Shipping Company Limited,
a British Virgin Islands Limited
Company, Plaintiff–Appellee,**

v.

**Orient Shipping Rotterdam, B.V.,
Defendant–Appellant.**

Nos. 02–5050, 02–5057.

United States Court of Appeals,
Second Circuit.

Dec. 17, 2002.

Jeremy J.O. Harwood, Healy & Baillie, New York, NY, for Appellant.

James H. Hohenstein, Holland & Knight (Anthony Princi, Orrick, Herrington & Sutcliffe, on the brief), New York, NY, for Appellee.

Present OAKES, CABRANES and KATZMANN, Circuit Judges.

### SUMMARY ORDER

**UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the District Court remanding the cause to the Bankruptcy Court for findings of fact and conclusions of law be and it hereby is **AFFIRMED,** and the Appeal of the order of the District Court denying the

motion to withdraw the reference to the Bankruptcy Court be and it hereby is **DISMISSED.**

## BACKGROUND

Orient Shipping Rotterdam, B.V. ("Orient") appeals two rulings of the District Court for the Southern District of New York, (Richard Conway Casey, *Judge*). The first appeal, No. 02–5050, asks us to reverse the District Court's order remanding to the Bankruptcy Court (Cornelius Blackshear, *Judge*) so that it could "consider its subject matter jurisdiction and [ ] issue findings of fact an conclusions of law with respect to the preliminary injunction imposed by it against Orient." In the second appeal, No. 02–5057, Orient asks us to reverse the District Court's denial of Orient's motion to withdraw the reference to the Bankruptcy Court.

The relevant facts are as follows: On May 8, 2001, Orient entered into a charterparty ("the May Charter") with Millenium Baltic, Inc. ("Millenium") for hire of one of its vessels ("the Vessel") at a rate of $5,000 per day. According to Orient, the May Charter was superseded by a later agreement executed by Millenium on December 31, 2001 ("the December Charter"), which was substantially similar to the May Charter except that it permitted Orient to hire the Vessel at a lower rate.

On January 15, 2002, Millenium filed for bankruptcy protection. During the bankruptcy proceedings, Millenium sought to sell its vessels, including the Vessel on hire to Orient, to an indenture trustee. In connection with the sale motion, Millenium filed a list of the contracts to be assumed and/or assigned as part of the sale. This list apparently referenced only the May Charter—not the December Charter.

On March 27, 2002, the Bankruptcy Court issued a Sale Order approving the transfer of Millemium's rights and obligations with respect to Orient to the indenture trustee, but it did not specify which charter—the May Charter or the December Charter—was thereby assigned. Thereafter, the indenture trustee transferred the Vessel to Jamaica.

On May 24, 2002, Jamaica brought an adversary complaint in the Bankruptcy Court seeking, among other things, a declaration that the May Charter is the only charter applicable to the Vessel. While Jamaica's adversary action was pending in the Bankruptcy Court, Orient's counsel in London issued a demand for arbitration pursuant to the December Charter and arrested the Vessel in Tunisia as security for its claims. The Vessel was later released after the issuance of a Bank Guaranty to secure Orient's claim in London.

Based predominantly upon Orient's actions in London and Tunisia, Jamaica sought a temporary restraining order and a preliminary injunction from the Bankruptcy Court compelling Orient to withdraw the foreign proceedings pending the Court's determination as to which charter was assumed and assigned by the Sale Order.

The Bankruptcy Court issued a Temporary Restraining Order on July 12, 2002 and subsequently held a hearing on July 22, 2002 with respect to the proposed preliminary injunction. Following oral argument, the Bankruptcy Court stated: "I am going to order a preliminary injunction and I'll reserve the right to issue a written opinion if anybody takes appeal." On July 31, 2002, the Court issued a written order setting forth the terms of the preliminary injunction as follows:

> The Defendant is hereby enjoined and prohibited, pending a final adjudication of this adversary proceedings, from (i) arresting the M/V Jamaica [the Vessel]; and (ii) taking any action or commencing

or continuing any proceeding before any tribunal, judicial or otherwise, in any jurisdiction, with the exception of Defendant's Motion to Withdraw the Reference currently pending before the District Court for the Southern District of New York, which related to the subject matters of this adversary proceeding.

Although Orient timely appealed the preliminary injunction order to the District Court, the Bankruptcy Court has not yet issued a written opinion explaining its findings of fact and conclusions of law in support of the preliminary injunction.

The District Court held oral argument on August 30, 2002, during which Orient claimed for the first time that the Bankruptcy Court lacked jurisdiction over the adversary action.

In a written order dated September 11, 2002, the District Court "remand[ed] this case to the Bankruptcy Court for the issuance of a written or oral opinion containing the requisite findings and legal analysis." Quoting *Rosen v. Siegel,* 106 F.3d 28, 32 (2d Cir.1997), the Court held that, "where no findings were made by the lower court, 'the only appropriate procedure is to remand the case to the [lower] court for an explanation of its decision.'" It then added that "[o]n remand, the Bankruptcy Court may wish to consider whether or not to consolidate its ultimate resolution of the injunction motion with a trial on the merits. See Fed.R.Civ.P. 65(a)(2)." The District Court left the preliminary injunction in place "pending the issuance of the proper findings."

The District Court also declined to consider the issue of subject matter jurisdiction, stating that "it is necessary for the Bankruptcy Court to address this legal issue as a threshold matter on remand." Orient timely appealed the District Court's order to this Court.

Meanwhile, on June 21, 2002, Orient moved in the District Court for an order withdrawing the reference to the Bankruptcy Court. The District Court held oral argument on July 24, 2002, after which it issued an oral decision declining to withdraw the reference. The following day, the District Court entered an order formally denying the motion. On August 23, 2002, Orient filed a notice of appeal and, thereafter, appealed to this Court the District Court's order denying its motion to withdraw the reference.

## DISCUSSION

■ Because the Bankruptcy Court failed to issue findings of fact and conclusions of law to support its order granting the preliminary injunction, neither we nor the District Court have any basis for reviewing the order. Accordingly, we affirm the District Court's decision to remand to the Bankruptcy Court so that it can issue a written or oral decision supporting its grant of the preliminary injunction. *See Rosen,* 106 F.3d at 32–33 (holding that a remand is necessary where, after reviewing a lower court opinion, "we are left unable to tell what standard the court was using and what facts it found to warrant th[e] extraordinary ... relief [afforded by a preliminary injunction]"); *Inverness Corp. v. Whitehall Laboratories,* 819 F.2d 48, 51 (2d Cir.1987) (holding that, where a lower court decision "neither informs us as to its underlying rationale nor served to discipline its approach to the case before it .... the only appropriate procedure is to remand the case to the [lower] court for an explanation of its decision").

■ Although the record is inadequate for appellate review, we affirm the District Court's decision to leave the injunction intact on remand because the preliminary injunction appears necessary to protect the Bankruptcy Court's jurisdiction. *See Ro-*

*sen,* 106 F.3d at 33 ("remanding the case but leaving the injunction intact[ ] is warranted [where] .... the pertinent issues are close .... the evidence in the record does not compel a ruling for either side, and we cannot say at this point in time that the district court committed reversible error." (internal citations and quotation marks omitted)); *cf. Inverness Corp.,* 819 F.2d at 51 ("We leave the preliminary injunction intact until the district court has had the opportunity to spell out its decision—a chore which, of course, we expect it to undertake with alacrity—as it would be inequitable to punish Inverness for the district court's failure to make specific findings.").

At oral argument before the District Court, Orient alleged for the first time that the Bankruptcy Court lacks subject matter jurisdiction. Without findings by the Bankruptcy Court, we are unable to determine whether this adversary action constitutes "[a] proceeding[ ] arising under title 11 or arising in or related to a case under title 11," as required for the Bankruptcy Court to have jurisdiction over it. 28 U.S.C. § 157(a). Accordingly, we also affirm the District Court's decision to permit the Bankruptcy Court to rule on the jurisdictional question in the first instance. *See, e.g., Universal Reinsurance Co., Ltd., v. St. Paul Fire and Marine Ins. Co.,* 224 F.3d 139, 141–42 (2d Cir.2000) (remanding to the district court for it to make factual findings necessary to determine whether it has subject matter jurisdiction).

█ Finally, we dismiss Orient's appeal of the District Court's order denying its motion to withdraw the reference to the Bankruptcy Court because we lack appellate jurisdiction to consider it. *See In re: Chateaugay Corp.,* 826 F.2d 1177, 1179 (2d Cir.1987) ("an order granting or denying withdrawal [from the bankruptcy court] under [28 U.S.C.] Section 157(d) is not a final appealable order"); *cf. Orion Pictures Corp. v. Showtime Networks, Inc. (In re: Orion Pictures Corp.),* 4 F.3d 1095, 1100 (2d Cir.1993), *cert. dismissed,* 511 U.S. 1026, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994) (holding that we have jurisdiction to consider an order denying a motion to withdraw the reference to a bankruptcy court only where the withdrawal order "merges into" the final order disposing of the underlying adversary action).

## CONCLUSION

For the foregoing reasons, No. 02–5057, the appeal of the District Court's order denying Orient's motion to withdraw the reference, is **DISMISSED.** The District Court's order remanding to the Bankruptcy Court for findings of fact and conclusions of law to support its preliminary injunction order and for a determination of whether it has subject matter jurisdiction over this adversary action, as appealed in No. 02–5050, is hereby **AFFIRMED.** The preliminary injunction will remain intact until the Bankruptcy Court enters its findings. Unlike the District Court, however, we do not urge the Bankruptcy Court to consolidate its findings on remand with a trial on the merits of the underlying dispute. Instead, as a result of the substantial burden placed on Orient by the preliminary injunction, we urge the Bankruptcy Court to issue the requisite findings and conclusions as expeditiously as possible, and we instruct the Bankruptcy Court to consolidate its findings with a trial on the merits only if such consolidation will not delay its ability to carry out this task.

We further instruct the Bankruptcy Court is to address the following issues on remand:

1. Whether this adversary action is "related to a case under title 11."

2. Whether this adversary action constitutes a "core proceeding" under the test set forth in *United States Lines, Inc. v. Am. Steamship Owners Mut. Protection and Indem. Ass'n, Inc. (In re United States Lines, Inc.)*, 197 F.3d 631, 637 (2d Cir.1999).

3. How, if at all, the determination of subject matter jurisdiction in this case is influenced by our holding in *Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223 (2d Cir. 2002).

4. Whether a bankruptcy court has "inherent jurisdiction" to interpret and enforce its own orders, independent of the statutory grant of jurisdiction under 28 U.S.C. § 1334.

5. Whether Jamaica's mounting legal fees can constitute a cause of "irreparable harm."

6. Whether Jamaica may be "irreparably harmed" by the inability to seek relief in a United States bankruptcy court (if the matter is first decided by arbiters in London or if the British courts enjoin this action).

7. Whether this case meets the test for "anti-suit" injunctions set forth in *The China Trade & Development Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35–36 (2d Cir. 1987). In particular, whether this test can be met, given that there are two other parties to the London arbitration.

8. Whether, under the test for "anti-suit" injunctions set forth in *The China Trade & Development Corp.*, 837 F.2d at 35–36, the injunction is overly broad.

We have the utmost confidence that the Bankruptcy Court will be able to resolve these issues with all due speed.