PER CURIAM.
This litigation concerns a dispute over which of two contracts for the carriage of goods by ship (known as “charterparties”) was assumed and assigned pursuant to a bankruptcy court sale order (“Sale Order”). The Sale Order provided for the sale of the principal asset of debtor Millenium Baltic, Inc., a ship called the Millenium Baltic (the “Vessel”), now known as the M/V Jamaica. The Jamaica Shipping Company Limited (“Jamaica”), the ultimate purchaser of the ship, brought an adversary proceeding in the bankruptcy court (the “Jamaica Adversary Action”), contending that a charterparty dated May 8, 2001 (the “May Charter”) was the operative contract. Orient Shipping Rotterdam B.V. (“Orient”), which holds both charters, claims that a charterparty dated December 31, 2001 (the “December Charter”) [1] was the operative contract. Orient commenced an arbitration in London pursuant to the terms of the arbitration clause contained in the December Charter. The bankruptcy court assumed jurisdiction over the Jamaica Adversary Action and enjoined Orient from proceeding with any other litigation or arbitration concerning the matter.[2] For a more complete picture *95 of the history of the bankruptcy case and the related litigation, we refer interested readers to our prior decision concerning the Jamaica Adversary Action. See In re Millenium Seacarriers, Inc., 54 Fed.Appx. 333 (2d Cir.2002).
Orient brings two appeals challenging the bankruptcy court’s anti-suit injunction. In Docket No. 05-5426, captioned In Re: Millenium Seacarriers, Inc., Orient contends that the bankruptcy court erred in assuming subject matter jurisdiction over the Jamaica Adversary Action and in imposing the anti-suit injunction. In Docket No. 05-5421, captioned In re: Millenium Baltic, Inc., Orient argues that the bankruptcy court erred in retaining subject matter jurisdiction over the Jamaica Adversary Action when it dismissed the underlying bankruptcy proceedings.
I
As an initial matter, we find no error in the bankruptcy court’s initial assumption of jurisdiction over the Jamaica Adversary Action because it is a “core” proceeding. We construe the concept of core proceedings broadly; the limits of the concept are interpreted to be “close to or congruent with constitutional limits.” In re United States Lines, Inc. 197 F.3d 631, 637 (2d Cir.1999) (internal quotation marks omitted). To determine whether litigation concerning a contractual dispute is a core proceeding, we assess “(1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization.” Id. “Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function.” Id. (internal citation omitted).
“[Ojrders approving the sale of property” constitute core proceedings, 28 U.S.C. § 157(b)(2)(N), and the Jamaica Adversary Action, which turns on the terms of the Sale Order, amounts to a request that the bankruptcy court enforce that order. We therefore deem the Jamaica Adversary Action a core proceeding and conclude that the bankruptcy court’s initial decision to exercise jurisdiction over that action was not error. See In re Petrie Retail, Inc., 304 F.3d 223, 230-31 (2d Cir.2002); see also In re Millenium Seacarriers, Inc., 419 F.3d 83, 97 (2d Cir.2005) (“Bankruptcy courts retain jurisdiction to enforce and interpret their own orders.”); Mt. McKinley Ins. Co. v. Corning Inc., 399 F.3d 436, 449 (2d Cir.2005) (“In Petrie, we held that core jurisdiction existed over a dispute between entities that had been involved in a reorganization proceeding (albeit not as debtors) over interpretation of the bankruptcy court’s sale order.”); In re Allegheny Health, Educ. and Research Found., 383 F.3d 169, 176 (3d Cir.2004) (“[W]e hold that the bankruptcy court correctly determined that the suit was a core proceeding because it required the court to interpret and give effect to its previous sale orders.”).
II
Orient argues that even if the Jamaica Adversary Action is a core proceeding, the bankruptcy court nonetheless erred by failing to dismiss that action when it terminated the underlying bankruptcy case. See In re Forges, 44 F.3d 159, 162 (2d Cir.1995) (adopting the “general rule that related proceedings ordinarily should be dismissed following the termi *96 nation of the underlying bankruptcy case”). We review the bankruptcy court’s decision to retain jurisdiction for abuse of discretion. Id.
In deciding whether to retain jurisdiction, a court is to consider four factors — namely, “judicial economy, convenience to the parties, fairness and comity.” Id. at 163. Here, the bankruptcy court did not make any findings relevant to these factors; instead, in its order dismissing the underlying bankruptcy, the bankruptcy court merely indicated it would retain jurisdiction over more than fifty listed adversary proceedings, among which was the Jamaica Adversary Action, “good cause having been shown.” On appeal, the district court determined that “[jjudicial economy and convenience to the parties are both served by the Bankruptcy Court’s interpretation of its own Sale Order due to its familiarity with the facts. Fairness and comity are not affected either way.”
Appellant argues that the decision to retain jurisdiction requires a bankruptcy court to make explicit findings regarding the applicability of the four Porges factors and that we must vacate the decision of the district court and remand the matter to the bankruptcy court for further findings. In Porges, this Court never said that the bankruptcy court must make explicit findings. See Porges, 44 F.3d at 163. Rather, we analogized to the supplemental jurisdiction context, and we went on to state that “the continued exercise of jurisdiction by a bankruptcy court rests on perhaps a more solid basis” for two reasons: (1) because “bankruptcy courts do not possess ... discretion over adversary proceedings arising under the Bankruptcy Code or arising in a case under the Code” and (2) because, “unlike a lawsuit in which a claim that gives rise to federal subject matter jurisdiction coexists with pendent or ancillary state claims, an adversary proceeding and the companion bankruptcy case constitute two distinct proceedings.” Id. at 162-63 n. 2. Our conclusion in Porges was that “[t]he decision whether to retain jurisdiction should be left to the sound discretion of the bankruptcy court or the district court, depending on where the adversary proceeding is pending.” Id. at 162.
While we acknowledge that the Porges inquiry is “jurisdictional” insofar as it involves the subject matter jurisdiction of the court, we do not agree with appellant’s contention that a court is stripped of jurisdiction over an ongoing adversarial action simply because it failed to make explicit findings with respect to the Porges factors when dismissing the underlying bankruptcy case. The decision of a forum court to retain jurisdiction is discretionary, and the court is only deprived of subject matter jurisdiction over the ongoing action if the decision to retain jurisdiction constitutes an abuse of discretion.
Of course, objections to the exercise of subject matter jurisdiction may be raised at any time in the course of a litigation. Entering explicit findings pursuant to the Porges factors is not, however, in itself, a jurisdictional prerequisite to the retention of jurisdiction. Accordingly, an objection to the failure of a forum court to make explicit findings pursuant to the Porges factors is waivable, provided that the existing record shows that the retention of jurisdiction did not amount to an abuse of discretion. In other words, a party that has not objected to the forum court’s failure to make specific findings relevant to the Porges factors is not entitled to remand for such findings (or, for that matter, a dismissal of the action) when we are satisfied that the forum court did not improperly exercise subject matter jurisdiction by abusing its discretion in retaining jurisdiction.
*97 Appellant failed to raise its Porges objection until the case was before the district court on appeal. The district court performed its own Porges analysis on the existing record and determined that the bankruptcy court had not abused its discretion in retaining jurisdiction. According to the district court, “[j]udicial economy and convenience to the parties are both served by the Bankruptcy Court’s interpretation of its own Sale Order due to its familiarity with the facts. Fairness and comity are not affected either way.” We agree with the district court’s analysis and find that the bankruptcy court did not abuse its discretion in retaining jurisdiction over the Jamaica Adversary Action.[3]
Ill
Even though appellant waived its objection to the bankruptcy court’s decision to maintain jurisdiction over the Jamaica Adversary Action, we nevertheless remand because the bankruptcy court violated the mandate rule, see U.S. v. Quintien, 306 F.3d 1217, 1225 (2d Cir.2002) (trial court must “follow an appellate court’s previous ruling on an issue”), by failing, in its “Opinion After Remand,” to address properly the seventh and eighth questions — concerning the applicability of the anti-suit injunction test set forth in China Trade and Development Corp. v. M.V. Choong Yong, 837 F.2d 33, 35-36 (2d Cir.1987)[4] — contained in our prior order. See In re Millenium Seacarriers, Inc., 54 Fed.Appx. at 337-38.
The bankruptcy court determined that “[t]he facts of this case do[ ] not magically turn this preliminary injunction into an ‘anti-suit’ injunction.”[5] The bankruptcy court explained that it was not required to satisfy the China Trade test because “[t]his court in no way attempts to permanently enjoin the foreign proceedings that either party may want to institute or continue.” The bankruptcy court cited no authority for its assumption that China Trade applies only to permanent injunctions. Nothing in China Trade or its progeny limits the China Trade reasoning to permanent injunctions. Rather, China Trade governs an order of a court to “enjoin a party before it from pursuing litigation in a foreign forum,” Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 652 (2d Cir.2004), which is exactly the type of order at issue here.
The district court remanded this case to the bankruptcy court on an alternative *98 ground' — namely, the bankruptcy court’s failure to make findings concerning the “second prong” of the ordinary test for the imposition of a preliminary injunction. See MyWebGrocer, LLC v. Hometown Info, Inc., 375 F.3d 190, 192 (2d Cir.2004) (“A party seeking a preliminary injunction must demonstrate (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant’s favor.” (internal quotation marks omitted)). We agree with the district court that the failure to address the second prong of the preliminary injunction test provides another basis for remand here.
Accordingly, on remand, the bankruptcy court shall make findings of fact and conclusions of law with respect to the application of the China Trade test, as necessary to answer the seventh and eighth questions contained in our prior order remanding this case. See In re Millenium Seacarriers, Inc., 54 Fed.Appx. at 337-38. Once the bankruptcy court has addressed the propriety of imposing an anti-suit injunction under the China Trade test, the bankruptcy court must then make findings on whether it is appropriate to enter a preliminary injunction here. The preliminary injunction will remain in place until the bankruptcy court complies with this order. Again, “[ujnlike the District Court, ... we do not urge the Bankruptcy Court to consolidate its findings on remand with a trial on the merits of the underlying dispute.” Id. at 337. Instead, we direct the bankruptcy court to comply with this Court’s mandate as expeditiously as possible and only to undertake such consolidation if it will not delay compliance with this order.
IV
The decision of the district court is hereby Affirmed, and we Remand the matter for further proceedings consistent with this opinion.

. The December Charter provided for a reduction in the amount paid to Millenium Baltic, Inc. from $5,000 per day (for 18 months) to $2,500 per day for the first 40 days of the charter, and $3,500 per day thereafter. The December Charter does not refer to the May Charter.

. On July 31, 2002, the bankruptcy court imposed the following injunction:
[t]he Defendant [Orient] is hereby enjoined and prohibited, pending a final adjudication of this adversary proceeding, from (i) arresting the [Vessel]; and (ii) taking any action or commencing or continuing any proceeding before any tribunal, judicial or otherwise, in any jurisdiction, with the ex *95 ception of Defendant’s Motion to Withdraw the Reference currently pending before the District Court for the Southern District of New York, which relates to the subject matters of this adversary proceeding.

. The bankruptcy court presumably opted to retain jurisdiction, at least in part, because of the familiarity of the presiding judge — -who has since retired — with the case. Although the retirement of the presiding judge does not render the retention of jurisdiction an abuse of discretion, the newly-assigned bankruptcy judge is free to revisit the court’s exercise of jurisdiction on remand.

. Pursuant to the China Trade test,
[a]n anti-suit injunction against parallel litigation may be imposed only if: (A) the parties are the same in both matters, and (B) resolution of the case before the enjoining court is dispositive of the action to be enjoined. China Trade, 837 F.2d at 35. Once past this threshold, courts are directed to consider a number of additional factors, including whether the foreign action threatens the jurisdiction or the strong public policies of the enjoining forum. Id. at 36.
Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 652 (2d Cir.2004).

.The bankruptcy court did note that ”[t]he parties are not the same in both matters,” but it made that determination in the context of its conclusion that the China Trade test did not apply. Moreover, the bankruptcy court did not consider whether the parties, although not identical, are "sufficiently similar to satisfy the first threshold requirement of China Trade." Paramedics Electromedicina Comercial, 369 F.3d at 652.