In re **MILLENIUM SEACARIERS,** et al., Debtor.

**Jamaica Shipping Company, Ltd., Plaintiff**

v.

**Orient Shipping Rotterdam, B.V., Defendant.**

**Bankruptcy No. 02–10190(JMP).**
**Adversary No. 02–02502(JMP).**

United States Bankruptcy Court, S.D. New York.

Nov. 28, 2006.

Holland & Knight LLP, James H. Hohenstein, Esq., Francesca Morris, Esq.,

New York City, for Jamaica Shipping Company Limited.

Blank Rome LLP, Jeremy J.O. Harwood, Esq., New York, NY, for Orient Shipping Rotterdam, B.V.

## MEMORANDUM DECISION ON REMAND FROM THE COURT OF APPEALS FOR THE SECOND CIRCUIT

JAMES M. PECK, Bankruptcy Judge.

The Court of Appeals for the Second Circuit, in *Millennium II*,[1] remanded certain issues to this Court relating to the propriety of continuing in effect an anti-suit injunction entered over four years ago. The questions presented require, among other things: (i) application to this case of the threshold factors to be satisfied before granting an anti-suit injunction as enunciated in the *China Trade*[2] and *American Home*[3] cases and (ii) provided those factors are present, consideration of whether the injunction, as issued, is overly broad and whether the injunction should remain in effect under applicable authority in this circuit for issuing a preliminary injunction. Following a status conference and in accordance with an agreed briefing schedule, the parties to this adversary proceeding submitted opening briefs, reply briefs and exhibits selected from an extensive record including hearing transcripts. Oral argument took place on November 17, 2006.

Upon consideration of the presentations and the record, this Court concludes that plaintiff, Jamaica Shipping Company, Limited ("Jamaica" or "Plaintiff"), has not satisfied the standards for continuation of

---

**1.** *Jamaica Shipping, Ltd. v. Orient Shipping Rotterdam, B.V. (In re Millennium Seacarriers),* 458 F.3d 92 (2d Cir.2006).

**2.** *China Trade & Development v. M.V. Choong Yong,* 837 F.2d 33 (2d Cir.1987).

**3.** *American Home Assur. v. Insurance Corp. of Ireland,* 603 F.Supp. 636 (S.D.N.Y.1984).

the preliminary injunction issued on July 31, 2002, enjoining certain threatened litigation and arbitration proceedings demanded by Defendant, Orient Shipping Rotterdam, B.V. ("Orient") in London. The decision to vacate the order granting the preliminary injunction is based on lack of symmetry between this litigation and the arbitration and the material changes in circumstances that have occurred since the injunction was first issued.

■■■ As stated in *American Home* and followed in *China Trade,* there are two threshold factors to be met before courts in this circuit will consider the merits of granting an "anti-suit" injunction, namely: (i) that the parties in both matters are the same and (ii) that the resolution of the case before the enjoining court will be dispositive of the matter being enjoined.[4] *China Trade,* 837 F.2d at 36. The Court of Appeals has directed this Court to review the preliminary injunction granted in this case and determine if the facts here meet both *China Trade* threshold factors. They do not.

Wayland Investment Fund, LLC ("Wayland") and Allfirst Bank ("Allfirst") are named as parties in the London arbitration, but neither is a party in this adversary proceeding, and determination of the adversary proceeding on the merits will not necessarily dispose of all issues that may be presented to the arbitration panel. In addition to failing the *China Trade* test, Plaintiff is now a shell entity, the vessel that is the subject of this litigation having been sold to an unaffiliated third party long after entry of the injunction. This

fundamental change in Jamaica's status makes it difficult for Jamaica to present a persuasive argument of irreparable harm. The Court concludes, as a result, that the injunction should be vacated.[5]

## BACKGROUND

The procedural history of the case is dense and involves multiple appeals and remands. Background facts are set forth in two opinions of the Court of Appeals for the Second Circuit *(Millennium II* and *Jamaica Shipping, Ltd. v. Orient Shipping Rotterdam, B.V. (In re Millennium Seacarriers),* 54 Fed.Appx. 333 (2d Cir. 2002)), a district court opinion *(Jamaica Shipping, Ltd. v. Orient Shipping Rotterdam, B.V. (In re Millennium Seacarriers),* 2005 U.S. Dist. LEXIS 21553) and an opinion of this Court entered in connection with an earlier remand (Opinion After Remand, February 17, 2004, Docket No. 41).

The most recent remand is the latest twist in a remarkably tenacious and long running battle between Jamaica and Orient over whether this Court or a London arbitration panel is the proper forum to answer the question of which, if either, of two charter party agreements applies to the vessel that is the subject of these agreements and to resolve certain claims arising out of the applicable charter party agreement. As a matter of bankruptcy law, resolution of the dispute depends on finding whether any valid agreement was assumed and assigned in connection with the bankruptcy sale of the vessel. This requires a review of the record and an interpretation of earlier proceedings in the

---

4. Once these threshold requirements are satisfied, courts then are required to consider additional factors as follows: "(1) frustration of a policy in the enjoining forum; (2) the foreign action would be vexatious; (3) a threat to the issuing court's in rem or quasi in rem jurisdiction; (4) the proceedings in the other forum prejudice other equitable considerations; or (5) adjudication of the same is-

sues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment." *China Trade & Dev. Corp.,* 837 F.2d at 35.

5. As a consequence of the decision to vacate the injunction, the Court does not need to address the question of whether the injunction is overly broad.

bankruptcy case of the Millennium Baltic, Inc. (the "Debtor").[6]

With the passage of time, circumstances have changed materially. Judge Blackshear, the bankruptcy judge who presided over the sale of the vessel and issued the injunction, has retired from the bench. The Debtor's bankruptcy case has been dismissed.[7] Jamaica, formed for the special purpose of holding title to the vessel formerly owned by the Debtor (then known as the M/V Millennium Baltic), transferred ownership of that vessel to an unaffiliated third party purchaser. Today, Jamaica has no ongoing operations or activities other than this litigation and no assets other than whatever residual interest it may have in certain collateral (the "Collateral") posted to secure release of the vessel after it was arrested by Orient in Tunisia. The charter party agreements, one dated May 8, 2001 between the Debtor and Orient (the "May Agreement") and the other dated December 31, 2001 between the Debtor and Orient (the "December Agreement"), expired in accordance with their terms years ago.

The prolonged period of cross-border maneuvering in this case seems to have been avoidable and to have grown out of an unfortunate mistake made in preparation for the bankruptcy auction of the M/V Millennium Baltic. During argument, counsel for Orient made clear his frustrations with a process that from the perspective of his client seemed fundamentally unfair. It is undisputed that counsel for Orient sent a fax notification to the Debtor prior to the sale hearing in 2002 advising that the schedule of executory contracts contained an error (see Docket No. 62, Affidavit of Jeremy J.O. Harwood in Support of Orient Shipping Rotterdam's Memorandum on Remand at pp. A42–64).

Orient and the Debtor executed a new charter party agreement prior to commencement of the bankruptcy case that appears intended to replace the May Agreement, and evidently this December Agreement should have been included in the Debtor's schedules submitted during the sale hearing as the relevant and only then applicable charter party agreement (see Docket No. 62, Affidavit of Jeremy J.O. Harwood in Support of Orient Shipping Rotterdam's Memorandum on Remand at p. A183). Whether that December Agreement is legally binding and enforceable against Jamaica as purchaser of the M/V Millennium Baltic, however, is in doubt as a consequence of the Debtor's failure to cure this error in the schedules annexed to the order approving the sale of the M/V Millennium Baltic. Judge Blackshear has already made a factual finding that the May Agreement, not the December Agreement, was assumed and assigned as part of the sale of the Millennium Baltic (see Opinion on Remand, ¶ 10).

Orient may have avoided this procedural morass if it had taken steps to make its position clear to the Court in advance of the sale hearing. Regrettably, counsel for Orient did not provide sufficient notice to the Court of the new charter party agreement in its objection to the sale of the M/V Millennium Baltic, and counsel asserts that he was not afforded an opportunity to press his objection regarding the agreement during the auction itself. The consequences of not correcting the record at that point have been extremely negative: assumption and assignment of the May Agreement instead of the December Agreement; arresting of Jamaica's vessel in Tunisia by Orient under apparent authority of that December Agreement;

---

6. U.S. Bankruptcy Court, S.D.N.Y. Case No. 02–10190.

7. See Docket No. 7, Order dismissing Case Number 02–10190, January 28, 2005.

posting of security by or on behalf of Jamaica to secure the release of the vessel; a demand for arbitration in London, commencement of this adversary proceeding; issuance of an emergency temporary restraining order and preliminary injunction by this Court; multiple appeals including two separate appeals to the Court of Appeals; and an earlier remand opinion by this Court. Despite all of this activity, nothing has been achieved on the merits. The process has been protracted, inefficient and wasteful of resources.[8]

Given the record in the bankruptcy case and the resulting uncertain status of the December Agreement, whether Orient was justified in taking action in foreign jurisdictions that adversely affected Jamaica's asset and commencing an arbitration in London as provided in the December Agreement are subjects that may be decided by the arbitration panel upon vacating of the injunction, or by this Court, provided that the Court retains jurisdiction of the adversary proceeding.

## DISCUSSION

### Jurisdiction

 The general rule in this circuit is that proceedings should ordinarily be dismissed when the underlying related bankruptcy case is dismissed. *In re Porges*, 44 F.3d 159, 162 (2d Cir.1995). Nonetheless, the retention of jurisdiction after dismissal of a bankruptcy case may be warranted depending upon four factors: (i) judicial economy; (ii) convenience to the parties; (iii) fairness and (iv) comity. *Id.* at 163. In *Millennium II*, the Court of Appeals invites, but does not require, this Court to reconsider the question of whether to retain jurisdiction of this adversary proceeding due to the retirement of Judge

Blackshear. In its opinion, the Court of Appeals postulates that Judge Blackshear, who handled this bankruptcy case and who was personally familiar with the facts and circumstances underlying this litigation, decided to retain jurisdiction based, at least in part, on his familiarity with case. *Millennium II*, 458 F.3d at 97 n. 3.

As the Court of Appeals concluded in *Millennium II*, this Court has core jurisdiction over the adversary proceeding and any decision to decline to exercise jurisdiction would be discretionary at this point. *See Millennium II*, 458 F.3d at 95–97. Based on a review of the issues raised in Jamaica's complaint and proposed amended complaint,[9] the Court believes that the exercise of jurisdiction over this adversary proceeding is institutional and not a personal attribute of any individual judge.

In considering the factors set forth in *In re Porges*, judicial economy, fairness and convenience to the parties and comity are best served by this Court's continued retention of jurisdiction. The adversary proceeding seeks determinations as to a sale process that was administered in and by this Court, and the record of proceedings in the bankruptcy case is complete and readily susceptible to interpretation by a bankruptcy judge who did not actually preside over the bankruptcy auction. This Court, and not a London arbitration panel, is the best forum to interpret orders with respect to that auction, to interpret issues of bankruptcy practice and bankruptcy law relating to executory contracts, and to decide questions about the sale and assignment of property of the Debtor's estate. Both parties to this litigation have counsel in New York, have litigated extensively in

---

8. The duration and intensity of the litigation activity, however also suggest that the parties perceive a meaningful tactical advantage will go to the winner.

9. Jamaica filed a motion for leave to amend its complaint (Docket No. 48). That motion was denied without prejudice to filing it again after determination of the *Millennium II* remand (Docket No. 57).

the federal courts in New York and have appeared in this litigation for over four years. Indisputably, this is a convenient forum.

Upon reconsideration of its jurisdiction in light of the dismissal of the Debtor's case and after weighing the factors set forth in *In re Porges,* this Court concludes that it is entirely appropriate to continue to exercise jurisdiction over the adversary proceeding.

*China Trade Threshold Factors*

■ As for the two-pronged China Trade standard for entering and maintaining an anti-suit injunction, Jamaica fails to satisfy either prong. The first *China Trade* threshold factor is "whether the parties to both suits are the same." *China Trade,* 837 F.2d at 36. The parties in the London arbitration include Wayland and Allfirst, neither one of which is a party to this adversary proceeding. Wayland may have aligned economic interests with Jamaica, but that is not clear from the record. Wayland, which indirectly controls Jamaica, was the holder of the largest percentage of outstanding bonds secured by assets of the various Millennium Debtors, and Allfirst was the indenture trustee for the bondholders. Jamaica received title to the M/V Millennium Baltic by a conveyance from Allfirst after Allfirst obtained legal title to the vessel as a result of its successful credit bid at the bankruptcy auction.

Jamaica's interests may be sufficiently similar to those of Wayland to satisfy the first threshold factor of the China Trade test, but that has not been shown convincingly on this record. Moreover, as an indirect subsidiary of Wayland with no assets, Jamaica appears dependent upon the kindness of affiliated entities for needed advances to fund its litigation efforts. Jamaica may be an instrumentality for the economic benefit of other members of its extended corporate family, but it has made

no direct showing of how its economic interests match those of Wayland. Allfirst, as former indenture trustee, sold the vessel to Jamaica and, given its position in the chain of title, should be indifferent to the outcome of the arbitration. There has been no showing that Allfirst and Jamaica's interests are aligned.

■ The second *China Trade* threshold factor, requiring that the litigation in this Court dispose fully of the litigation in the foreign tribunal, also is not satisfied. Although no answer has yet been filed to the complaint, it is reasonable to anticipate that Orient will vigorously defend on the merits. The litigation in this Court conceivably will include arguments by Orient that the May Agreement was modified by the parties conduct so that it should be deemed to include the terms and conditions of the December Agreement. Orient may also argue that it would be both inappropriate and inequitable to bind Orient to an invalid charter party agreement and seek a finding that the December Agreement should be substituted for the May Agreement to cure the error. Orient may make other creative arguments. The outcome of the adversary proceeding at this point cannot be predicted, and this is not the time to identify every conceivable argument that Orient might develop. In short, it is not possible to conclude that the adversary proceeding will dispose of all issues in the arbitration unless the Court were to find in Jamaica's favor on the merits. Since that outcome, while possible, is not free from doubt, the second prong of the *China Trade* test is not met.

*No Irreparable Harm*

■ In addition to failing to meet the *China Trade* threshold tests for an anti-suit injunction, Jamaica no longer can show any irreparable harm absent continuation of the injunction. *See MyWebGro-*

*cer, LLC v. Hometown Info, Inc.,* 375 F.3d 190, 192 (2d Cir.2004) (articulating the test for granting a preliminary injunction as whether the party requesting the injunction has shown (i) irreparable harm will ensue absent the injunction and (ii) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them fairly litigable and the balance of hardship tipping decidedly in favor of the movant).

Predominantly, if not exclusively, the real dispute between Jamaica and Orient has become an arm wrestling match for procedural leverage with respect to the forum that will resolve conflicting claims as to the disposition of the Collateral, approximately $550,000 advanced by or on behalf of Jamaica to obtain the release of the vessel after its arrest by Orient acting under the authority of the December Agreement. Rather than involving property of the estate or claims of creditors, this adversary proceeding, while nominally dealing with threshold questions of contract assumption, is driven by the economic interests of non-debtors seeking proceeds of a fund governed by English law. Whether the May Agreement, the December Agreement or neither agreement was assumed and assigned will impact property of Jamaica (the Collateral) and claims of Orient to the Collateral under the December Agreement.

Because of all the time spent jockeying for position and arguing about the procedural preliminaries, the dispute that led to the preliminary injunction and allegations of irreparable harm no longer involves a ship on the high seas and the risk of interrupted operations of that vessel. During argument on November 17, 2006, counsel for Jamaica acknowledged that his client had no assets other than its claim for the return of the Collateral. Counsel also confirmed that his legal fees are being advanced on Jamaica's behalf by a mari-

time management company based in Hong Kong. Mounting legal fees, thus, do not harm the plaintiff. Given the character of the dispute as it has evolved, Jamaica, having become an empty shell as a result of divesting itself of its single asset, is simply fighting for advantage relative to the Collateral. Under these changed circumstances, Jamaica is unable to claim irreparable harm or any continuing need for a preliminary injunction.

*CONCLUSION*

The lifting of the injunction may lead to the unfavorable outcome of competing forums working at cross purposes, potentially leading to inconsistent results. This would be especially unfortunate after so much energy and effort already have been expended to preserve the bankruptcy court's ability to review, interpret and clarify the meaning of its own orders.

The Court believes that it would be in the interest of justice, notwithstanding the termination of the anti-suit injunction, for the adversary proceeding and the London arbitration to move forward in a coordinated fashion. By adopting such an approach, this Court can make additional findings and conclusions to aid in resolving questions about the Debtor's bankruptcy case and its impact on the December Agreement, and the arbitration panel can be guided by such findings and conclusions in rendering any decisions or awards regarding that agreement and the Collateral. While this Court can do nothing to force the arbitrators to accept and follow its findings, the Court expects the panel to respect decisions of this Court in order to avoid inconsistent results and in the interests of comity.

Within ten days after receipt of notice of this Memorandum Decision, Orient shall submit an order, in form and substance acceptable to Jamaica, providing for termination of the preliminary injunction, with

each party to bear its own costs. Jamaica, in its discretion, may renew its Motion to Amend its Complaint at any time. The Court shall promptly schedule a status conference to further the expeditious and economical resolution of the case.