**VILLAGE OF WESTFIELD, N.Y., Plaintiff–Counter–Defendant–Appellee,**

v.

**WELCH'S, Defendant–Counter–Claimant–Appellant.**

**Docket No. 98–7456.**

United States Court of Appeals, Second Circuit.

Argued Nov. 24, 1998.

Decided Feb. 26, 1999.

Alan M. Wishnoff, Buffalo, NY (Phillips, Lytle, Hitchcock, Blaine & Huber LLP, of counsel), for Defendant–Counter–Claimant–Appellant.

Cheryll Smith, Buffalo, NY (James L. Magavern, B. Kevin Burke, Jr., Law Student Assistant, Magavern, Magavern & Grimm, L.L.P., of counsel), for Plaintiff–Counter–Defendant–Appellee.

Before: OAKES, WALKER, and McLAUGHLIN, Circuit Judges.

## I. INTRODUCTION

OAKES, Senior Circuit Judge:

This action arises out of the Village of Westfield's calculation of "user charges," which are imposed against Welch Foods, Inc. to finance the operation and maintenance costs for the Village's Water Pollution Control Plant. The district court stayed this action because a pending proceeding in New York state court was also addressing the legality of the user charges. The sole ques-

tion before us is whether this action should have been stayed.

## II. BACKGROUND

### A. Factual Background

In the early 1970s, the Village of Westfield was required to construct or obtain the use of new wastewater treatment facilities. The Village's Water Pollution Control Plant was built in 1975, financed in part with federal funding provided under the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* (FWPCA). Under federal law, the Village was required to adopt a user charge system based on actual use of wastewater treatment services, such that each user would pay its proportionate share of the plant's operation and maintenance costs based on its proportionate contribution to the total wastewater loading from all users. *See* 33 U.S.C. § 1284(b)(1)(A).

In 1975, the Village and Welch Foods, Inc. (Welch), which had a grape processing plant in the Village, entered into a sewer agreement pertaining to the construction and use of the plant. The agreement provided a formula for assessing user charges against Welch to finance the plant's operation and maintenance costs. These charges were to be based on Welch's actual discharge of organic materials creating biological oxygen demand to the plant.

In 1986, the Village amended the sewer ordinance and altered the formula for calculating user charges to contain "fixed" costs and "variable" costs. Under the new formula, the "fixed cost" element of operation and maintenance costs would be based on the design capacity for each industrial user. Welch objected to this amendment, arguing that the FWPCA required the user charges to be based on actual proportionate use. Although Welch disagreed with the Village's calculation of operation and maintenance charges based on design capacity rather than actual use, it paid these charges for almost a decade, until October 1995.

### B. The State Court Litigation

In 1984, before the Village amended the sewer ordinance to change the formula for calculating user charges, Welch sued the Village, seeking to recover industrial cost recovery charges which had been collected by the Village during a congressional moratorium on such charges.[1] A year later, Welch commenced a second state court action against the Village and the members of its Board of Public Utilities contesting the sewer user charges. This second action was consolidated with the 1984 action. The state court dismissed the industrial cost recovery claims, but not the user charge claim.

In 1990, Welch commenced an action in federal district court challenging the Village's 1986 ordinance. In 1993, Welch agreed to discontinue the federal action when the parties stipulated to add the claims asserted in the federal action to the ongoing state court action. New York State Supreme Court Justice Joseph Gerace began presiding over the state court action in 1991 or 1992.

In 1993, the Village moved to dismiss Welch's state court complaint and Welch cross-moved for summary judgment. The court noted in a 1994 order that Mogen David Wine Corporation and Growers Cooperative Grape Juice Company, two other local industrial users of the water pollution control plant, should have been joined to the action. The Village impleaded Mogen David and Growers Cooperative as third-party defendants in 1995.

In April 1995, the United States Environmental Protection Agency informed the Village by letter that its user charge system did not comply with federal law. It stated that federal law mandated that charges for operation and maintenance costs be based on actual use rather than design capacity, and that the Village was required to comply with federal law because it had accepted a federally funded grant award.[2]

---

1. In a program which was later repealed by Congress, industrial users of federally funded wastewater treatment plants were required to pay back portions of the federal grant money.

2. The Environmental Protection Agency has reiterated this position in subsequent letters to the Village.

The court granted Welch's motion for partial summary judgment in October 1995, holding that the sewer charges imposed by the Village violated the FWPCA and the sewer agreement. The court also noted that "the main beneficiary of Welch's overcharges are the other industries, Mogen David and Grower's [sic] Cooperative." Welch stopped paying the sewer charges.

In May 1996, the Village moved to set aside the October 1995 ruling and to renew the summary judgment motions on which it was based. In July 1996, Justice Gerace granted the Village's motion, deferred ruling on the summary judgment motions, and provided for further discovery.[3] In Welch's words, the parties were "back at square one" after thirteen years of litigation.

On August 8, 1997, Justice Gerace ruled that Welch had to pay its back sewer charges from 1995–96 and 1996–97 in order to continue to litigate the validity and proper amount of those charges. He granted the Village's motion to dismiss Welch's RICO claim, and also dismissed Welch's claim under the FWPCA, holding that the statute did not create a "private right of action." Justice Gerace decided to convert the Village's motion to dismiss the complaint into a motion for summary judgment, and adjourned the motion until September 22, 1997, to allow the parties time to submit additional papers. On August 20, Justice Gerace gave the parties until January 20, 1998, to file dispositive motions.

On October 6, 1997, Justice Gerace reversed his earlier decision, holding that under the circumstances of the case Welch would not be required to pay the contested sewer charges while it litigated their validity. On February 4, 1998, the Fourth Department of the Appellate Division reversed Justice Gerace's July 1996, decision, reinstating the October 1995 order granting partial summary judgment in favor of Welch. On March 3, 1998, Justice Gerace reversed himself once again, and ordered Welch to pay the back sewer charges. On April 9, Justice Gerace

held that the October 1995 order was not "the law of the case," and he subsequently signed an order declaring that the parties were "relieved from its terms."

On July 24, 1998, Justice Gerace denied Welch's motion that he recuse himself, denied Welch's motion for a change of venue, and granted the Village's motion to admonish Welch's counsel for his conduct in the litigation. On September 28, 1998, Justice Gerace again ordered Welch to pay back sewer charges.

Because Welch was granted permission in 1997 to add additional Board of Public Utilities members and Village Trustees as defendants, there are now twenty-five defendants and two third-party defendants in the state court action.

### C. The Federal Court Litigation

In January 1997, the Village sued Welch in state court to recover the sewer charges imposed on Welch for the 1995–96 and 1996–97 fiscal years. (As noted above, Welch ceased paying the charges after Justice Gerace's October 1995 decision, later set aside, that the charges violated federal law.) Welch was the sole defendant named in that action. Welch removed the action to the United States District Court for the Western District of New York. Welch served an answer with counterclaims in February 1997, seeking a declaration of rights under the sewer agreement and the FWPCA as well as damages caused by the Village's conduct.

In April 1997, Welch moved for partial summary judgment seeking dismissal of the Village's claims for user charges under the Village's 1986 sewer ordinance. The Village moved to stay or dismiss the action, arguing that Welch was attempting to circumvent the pending state court proceedings. At this time, the Village also served a supplemental answer in the state court action containing a new claim for user charges owed by Welch for fiscal years 1995–96 and 1996–97; this

---

**3.** In so doing, the court considered facts that had not been previously before it and determined that the Village might be entitled to recover costs based on factors other than actual usage. It reasoned that the Village had constructed the plant to accommodate Welch's needs, and concluded that neither the Village residents nor the Village should be forced to bear the costs of the more expensive plant that was built to serve the particular needs of the industries.

new claim was identical to the Village's complaint in the federal action.

United States District Court Judge William M. Skretny held a hearing to consider both motions. During the hearing, the court stated that

> As I see it, the issues before [New York State Supreme Court Justice Gerace] are, for all practical purposes, similar and/or identical to the issues before me. I can't resolve any of these issues any quicker than Judge Gerace, at least as far as his schedule is concerned.... [I]t just, you know, plain doesn't make sense for me to duplicate or try to outrace Judge Gerace to the finish line. No matter how I look at it, in terms of the history of the state case, the issues with respect to the 1995 through 1997 period are, likewise, before him in some fashion, although it's kind of a jumbled mess in terms of the amended Complaint, and the counterclaims, and the motions to dismiss, and everything else. But nevertheless, they're, in some fashion, before him, so I'm inclined to grant the motion to stay....

The next day, the court granted a stay pending the outcome of the state court action, with a "report back" date set for September 3, 1997. After the parties reported back on September 3, the court extended the stay until January 27, 1998, and ordered the parties to return to discuss the status of the case.

On January 23, 1998, Welch filed a notice of motion seeking relief from the stay. On March 3, 1998, the district court issued an order denying Welch's motion to vacate the stay and administratively terminating the action.

Welch appeals.

### III. STANDARD OF REVIEW

■ We review the district court's decision to stay the case on abstention grounds for an abuse of discretion. *See Dittmer v. County of Suffolk,* 146 F.3d 113, 116 (2d Cir.1998). Our review is "somewhat rigorous":

> [b]ecause we are considering an exception to a court's normal duty to adjudicate a controversy properly before it, the district

court's discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved. Thus, there is little or no discretion to abstain in a case which does not meet traditional abstention requirements.

*Id.* (alteration in original) (quoting *In re Joint Eastern & Southern Dist. Asbestos Litig.,* 78 F.3d 764, 775 (2d Cir.1996)).

### IV. DISCUSSION

Although federal courts have a "virtually unflagging obligation" to exercise their jurisdiction, *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), there are several traditional categories of abstention. *See Younger v. Harris,* 401 U.S. 37, 43–54, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (abstention appropriate where there is a pending state criminal proceeding); *Burford v. Sun Oil Co.,* 319 U.S. 315, 317–34, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (abstention appropriate to avoid interference with attempts to establish coherent state policy and issues of peculiarly local concern); *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 498–501, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (abstention appropriate to avoid unnecessary resolution of a constitutional issue that might be mooted by state court construction of a state law); *see also MacDonald v. Village of Northport,* 164 F.3d 964, 967–68 (6th Cir.1999).

■ In *Colorado River,* the Supreme Court held that abstention may also be appropriate in cases that do not fit neatly within these traditional categories. *See Colorado River,* 424 U.S. at 817–18, 96 S.Ct. 1236; *DeCisneros v. Younger,* 871 F.2d 305, 307 (2d Cir.1989). Abstention under *Colorado River* applies where, as in the instant case, "state and federal courts exercise concurrent jurisdiction simultaneously." *Burnett v. Physician's Online, Inc.,* 99 F.3d 72, 76 (2d Cir. 1996). The Supreme Court held that although a pending action in a state court does not generally bar proceedings involving the same matter in a federal court, a federal court may dismiss a federal suit for "reasons of wise judicial administration" where there are "exceptional" circumstances. *Colorado*

*River*, 424 U.S. at 818, 96 S.Ct. 1236; *see also Burnett*, 99 F.3d at 76. The Court cautioned that abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it" and that "[a]bdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Colorado River*, 424 U.S. at 813, 96 S.Ct. 1236 (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959)).

█ To determine whether abstention under *Colorado River* is appropriate, a district court is required to weigh six factors, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *see also Burnett*, 99 F.3d at 76. These six factors include:

(1) the assumption of jurisdiction by either court over any res or property;

(2) the inconvenience of the federal forum;

(3) the avoidance of piecemeal litigation;

(4) the order in which jurisdiction was obtained;

(5) whether state or federal law supplies the rule of decision; and

(6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.

*See Burnett*, 99 F.3d at 76. No single factor is necessarily decisive, *see DeCisneros*, 871 F.2d at 307, and the "weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16, 103 S.Ct. 927.

The court below stayed the action, and subsequently denied Welch's motion to vacate the stay, due to the existence of the ongoing state court proceeding before Justice Gerace. The issue here in dispute is whether the district court's decision to stay the case and its subsequent denial of Welch's motion

to vacate the stay were proper under *Colorado River*.

Welch argues that the district court abused its discretion by failing to perform the analysis required by *Colorado River*. In seeking a remand of the case for proceedings on the merits, Welch urges us to reverse the district court's order denying Welch's motion to vacate the stay and to hold that the district court had no discretion to abstain under *Colorado River*. Alternatively, it asks us to remand the case so that the district court may perform the analysis that is required under *Colorado River*. The Village, by contrast, contends that the district court properly stayed the case.

█ We have expressly held that "[a]lthough the test for *Colorado River* abstention is no 'mechanical checklist,' the district court *must* balance the relevant factors in reaching its decision." *Burnett*, 99 F.3d at 77 (emphasis added) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16, 103 S.Ct. 927). In this case, the district court's written orders, which granted the stay and denied Welch's motion to vacate the stay, were summary in nature and did not discuss or even mention the *Colorado River* factors. Instead, during oral argument and status conferences, the court referred to the progress of the state court case and described conversations it had with Justice Gerace. The district court did not address the *Colorado River* factors in a manner that would permit us to review its decision to abstain. Because the district court's decision is unreviewable, we cannot affirm it. *See Burnett*, 99 F.3d at 77 (stating that the district court's opinion, although a "lucid statement of practical and equitable considerations that bear upon abstention," was not reviewable by the appellate court because it did not address the *Colorado River* factors).

█ In light of our conclusion that the district court did not properly perform the *Colorado River* analysis, we could vacate the stay and remand this action so that the district court may consider the *Colorado River* factors. *See id.* We decline to take this approach, however, because it is clear from the record that the stay was not warranted

under *Colorado River* and that the district court on remand could reach no other conclusion as a matter of discretion. We reach this conclusion by considering the record before us in the context of the six *Colorado River* factors. In so doing, we heed the Supreme Court's statement that,

> our task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction.

*Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25–26, 103 S.Ct. 927.

### (1) *The assumption of jurisdiction by either court over any res or property*

This action was not an in rem action and did not involve jurisdiction over property. We have held that the absence of a res "point[s] toward exercise of federal jurisdiction." *DeCisneros*, 871 F.2d at 307 (citing *Bethlehem Contracting Co. v. Lehrer/Mc-Govern Inc.*, 800 F.2d 325, 327 (2d Cir.1986)). This factor thus weighs against the stay.

### (2) *The inconvenience of the federal forum*

The Village concedes that "the geography factor is substantially neutral." We have held that where the federal court is "just as convenient" as the state court, that factor favors retention of the case in federal court. *Youell v. Exxon Corp.*, 48 F.3d 105, 113 (2d Cir.) (citing *De Cisneros*, 871 F.2d at 307; *Bethlehem*, 800 F.2d at 327–28), *vacated on other grounds*, 516 U.S. 801, 116 S.Ct. 43, 133 L.Ed.2d 9 (1995).

■ The Village also maintains that it would have to litigate in both federal and state courts if the district court did not abstain, and that litigating in two forums is necessarily less convenient than litigating in one forum. This argument would eviscerate *Colorado River*, as federal courts consider abstaining under *Colorado River* only in cases where there are concurrent and simultaneous federal and state proceedings. This factor therefore could not justify the district court's stay.

### (3) *The order in which jurisdiction was obtained*

■ This factor does not turn exclusively on the sequence in which the cases were filed, "but rather in terms of how much progress has been made in the two actions." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21, 103 S.Ct. 927. In addition, where there has been limited progress in a state court suit, "the fact that the state action was commenced before the federal suit carries little weight." *Andrea Theatres, Inc. v. Theatre Confections, Inc.*, 787 F.2d 59, 64 (2d Cir. 1986).

Welch argues that the federal action was progressing well ahead of the state court action when the district court granted the stay. While the Village does not contest that the federal action has proceeded apace, it maintains that the state court action has also progressed and that, in any case, Welch is responsible for much of the delay in the state court action.

Comparing the relative progress of the state and federal proceedings in this case is only slightly complicated by the fact that the state court litigation has endured for so long. The state court has made some progress in the action, which is not surprising given the fact that it has invested over thirteen years in the matter. By comparison, the Supreme Court cases that discuss this factor exhibit a starker contrast between the relative progress of the state and federal actions at issue. *See, e.g., Colorado River*, 424 U.S. at 820, 96 S.Ct. 1236 (reasoning that the absence of any proceedings in federal court other than the filing of the complaint prior to the motion to dismiss favored dismissal of the federal suit); *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22, 103 S.Ct. 927 (holding that no *Colorado River* abstention was justified; noting that "the federal suit was running well ahead of the state suit at the very time the District Court decided to refuse to adjudicate the case").

The record demonstrates that the district court had no discretion to abstain on grounds of the order in which jurisdiction was ob-

tained. There had been considerable progress in the federal action when the district court granted the stay. Within six months of January 1997, when the case was first placed on the federal docket, Welch had served discovery demands, a motion to compel discovery, and a motion for partial summary judgment, and the Village had cross-moved for summary judgment. The district court had issued a scheduling order requiring that discovery be completed by September 24, 1997, and setting the trial for April 21, 1998. There had been comparatively less progress in the state court. As noted above, the state court had set aside its October 1995 summary judgment decision and deferred any ruling on the merits until the conclusion of discovery. Although the state court at one point ordered discovery to be conducted and completed in 1997, discovery had not been completed when the federal district court granted the stay in July 1997, nor by the January 1998 status conference when the court denied Welch's motion to vacate the stay, nor by March 1998 when the court entered the final order. Because the district court could not have concluded that there was more progress in the state action than in the federal action, this factor weighs against the stay.

The Village also argues that Welch's intent to litigate this action in federal court has contributed to the delay in the state court. It contends that a district court may abstain from a case to avoid interfering with state court proceedings, and that any incidental delay caused in the state action by the existence of this federal action is itself a reason to abstain. In our view, the alleged incidental delay in the state court does not rise to the level of an "exceptional" circumstance that justifies the surrender of the district court's "virtually unflagging obligation" to decide cases within its jurisdiction. *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236.

### (4) *The avoidance of piecemeal litigation*

The Village argues that vacating the stay and allowing the federal action to go forward would result in piecemeal litigation. According to its analysis, it cannot implead Mogen David into the federal action because doing so would destroy the diversity jurisdiction; yet, "any adjudication as to the proper allocation of the costs of the Village sewage treatment system will be binding" on Welch, Mogen David, and the Growers Cooperative. The Village further contends that, because Mogen David should be present in any action regarding the plant's operation and management costs, and because Mogen David cannot be present in the federal action, the federal action must be stayed so that the Village will not be exposed to "possibly conflicting results in separate actions."

We are not persuaded that the federal action must be stayed in order to prevent piecemeal litigation. First, the Supreme Court has held that "mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." *Colorado River*, 424 U.S. at 816, 96 S.Ct. 1236. Second, as Welch points out, Welch's counterclaim in the federal action does not seek to allocate sewer treatment charges to Mogen David and the Growers Cooperative. Rather, Welch seeks only a determination of its "share of the pie," that is, a declaration of Welch's rights under the sewer agreement, the FWPCA, and the federal and state grant agreements. The Village's argument, if logically extended, would require the joinder of all the parties that could be affected by a decision in favor of Welch. This would be impractical and unnecessary, in part because the Village already represents the interests of the residential and industrial users of the plant. Moreover, as the Village conceded in oral argument, not every party who could be affected by a decision in favor of Welch is in the state court. Finally, as the Village also conceded in oral argument, Mogen David may be heard as an amicus without destroying diversity jurisdiction if its interests need to be represented in the federal action. This factor therefore could not justify the district court's stay.

### (5) *Whether state or federal law supplies the rule of decision*

■ The fifth factor in the exceptional circumstances test is whether state or federal law provides the rule of decision on the mer-

its. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 23, 103 S.Ct. 927. We have stated that "[w]hen the applicable substantive law is federal, abstention is disfavored." *DeCisneros*, 871 F.2d at 308. We also note that although the presence of federal issues strongly advises exercising federal jurisdiction, the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex. *See id.* at 308–09; *Bethlehem Contracting*, 800 F.2d at 328.

Welch's defense to the Village's claim for the 1995–97 user charges is that the Village's user charge system is illegal and that the 1995–97 user charges were therefore invalid. Federal law will govern whether the user charges imposed against Welch are valid. As noted above, the user charges pertain to the operation and maintenance costs for the Water Pollution Control Plant, which was built with federal funding provided under the FWPCA. As a condition of receiving the federal funding, the Village was required to comply with the FWPCA user charge provisions contained in 33 U.S.C. § 1284(b)(1)(A). The Village was also required to obtain EPA approval of its user charge system. *See* 40 C.F.R. §§ 35.900, 35.929, and 35.935–13 (1998). Section 45–6(H) of the Village's municipal code recognizes that it is required to charge sewer rates which are "consistent with Environmental Protection Agency rules, regulations and the provisions of any grants made to the village."

The FWPCA and EPA regulations form the basis and background under which the sewer agreement and the grant agreements must be analyzed.[4] Abstention is therefore disfavored. *See DeCisneros*, 871 F.2d at 308.

**(6) *Whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction***

In analyzing the sixth factor in the special circumstances test, federal courts are to determine whether the "parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28, 103 S.Ct. 927. The Supreme Court has stated that "[i]f there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all." *Id.* This factor is "more important when it weighs in favor of federal jurisdiction." *Bethlehem Contracting*, 800 F.2d at 328.

The district court was well aware of the slow pace of the state court proceeding. Based on the record before it, the district court had no discretion to assume that the state court was an adequate vehicle for the "prompt resolution" of the issues. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28, 103 S.Ct. 927. Accordingly, this factor weighs against the stay.

As we stated above, our task under *Colorado River* is not to determine whether there is some substantial reason for the exercise of federal jurisdiction; rather, we must ascertain whether there exist exceptional circumstances that justify the surrender of federal court jurisdiction. *See id.* at 25–26, 103 S.Ct. 927. As our analysis of the record in the context of the six *Colorado River* factors shows, such circumstances do not exist in this case.[5] The district court had no discre-

---

4. The Village argues at length that this factor weighs in favor of abstention, asserting that the FWPCA provides no private right of action, that Welch's reliance on the FWPCA does not create federal question jurisdiction, and that state law supplies the rule of decision. We disagree. Without deciding whether Welch has a private right of action under the FWPCA, we note that Welch has asserted several federal causes of action—including claims based on the Supremacy Clause, the Contract Clause, the Due Process Clause, the Equal Protection Clause, and 42 U.S.C. § 1983—that do not depend on the existence of a private right of action under the FWPCA. Moreover, as we state above, the sewer

agreement and the grant agreement must be analyzed in light of the FWPCA and the EPA rules and regulations. Because the interpretation of federal law is vitally important to this case, the "rule of decision" factor under *Colorado River* weighs against abstention.

5. We note that the Supreme Court held in *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995), that a discretionary standard, and not the *Colorado River* exceptional circumstances standard, governs a district court's decision to stay a declaratory judgment action on grounds of a parallel state court proceeding. *Wilton* does not apply here. Although

tion to abdicate federal jurisdiction. We therefore vacate.

## V. CONCLUSION

As we stated recently in *Dittmer*, a district court's discretion to abstain must be exercised within the "narrow and specific limits" prescribed by the particular abstention doctrine involved. *Dittmer*, 146 F.3d at 116 (quoting *In re Joint Eastern & Southern Dist. Asbestos Litig.*, 78 F.3d 764, 775 (2d Cir.1996)). There is "little or no discretion to abstain in a case which does not meet traditional abstention requirements." *Id.* (quoting *Asbestos Litig.*, 78 F.3d at 775). Because the record in this case demonstrates that the district court had no discretion to abstain, we need not remand this matter to the district court so that it may consider the *Colorado River* factors. Instead, we vacate the district court's order and remand for consideration of this action on the merits.

Welch did seek a declaration of rights under the sewer agreement and the FWPCA, the federal action did not seek purely declaratory relief. Rather, the Village sought payment of the unpaid user charges against Welch. Welch, in turn, contested the payment and sought damages caused by the Village's conduct.