**SUFFOLK FEDERAL CREDIT UNION, Plaintiff,**

v.

**CUMIS INSURANCE SOCIETY, INC., Defendant.**

**No. 10–CV–1 (ADS)(ETB).**

United States District Court, E.D. New York.

July 22, 2010.

Frankfurt Kurnit Klein & Selz, P.C. by: Amelia Katherine Seewann, Esq., Jeremy Seth Goldman, Esq., Jessie F. Beeber, Esq., Patrick J. Boyle, Esq., Of Counsel, New York, N.Y., for Plaintiff.

Sedgwick Detert Moran & Arnold LLP by: Arthur Aizley, Esq., Brian Maurice Oubre, Esq., Of Counsel, New York, N.Y., for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This is an insurance coverage action in which Plaintiff Suffolk Federal Credit Union ("Suffolk") alleges that Defendant Cumis Insurance Society, Inc. ("Cumis") breached the terms of the parties' contract by refusing to indemnify Suffolk for losses arising from a fraud committed by Suffolk's loan servicer, CU National Mortgage, LLC ("CU National"). Before this lawsuit was filed, Cumis commenced an action in Wisconsin against Suffolk and many other credit unions, seeking a declaratory judgment that it is not obligated to cover losses the credit unions sustained as a result of CU National's widespread fraud.

Cumis requests that the Court dismiss or stay this action in deference to the Wisconsin litigation, pursuant to the abstention doctrine established by the Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). For the reasons discussed below, Cumis's motion is denied.

## I. BACKGROUND

### A. Factual Background

In 2003, Suffolk and CU National entered into an agreement whereby CU National agreed to perform various services in connection with Suffolk's residential mortgage business. One of those services was to facilitate the sale of certain mortgage loans that Suffolk did not wish to keep in its portfolio.

After an investigation by federal prosecutors, Michael J. McGrath, Jr., the controlling shareholder of the company that owned CU National, admitted that he and others conspired to steal hundreds of mortgage loans from various credit unions, including Suffolk. In essence, McGrath and his co-conspirators would sell mortgage loans to Fannie Mae without Suffolk's knowledge or consent, conceal those sales by falsifying records to create the impression that the loans remained in Suffolk's portfolio, and then keep the sale proceeds without remitting the money to Suffolk. Suffolk alleges that it suffered more than $42 million in losses arising out of this scheme.

In 2008, Suffolk purchased from Cumis a fidelity bond which protected Suffolk against all "covered losses" discovered between April 1, 2008 and April 1, 2009. In particular, the bond insured Suffolk against losses resulting directly from

forged or altered mortgage documents. The bond also includes coverage for losses arising from the dishonest acts of directors and employees. The bond defines the term "employees" to include "servicing contractors".

On February 24, 2009, after discovering CU National's fraud, Suffolk provided Cumis with timely notice of the losses it sustained. However, Cumis maintains that the losses Suffolk suffered at the hands of CU National are not covered by the fidelity bond at issue.

## B. Procedural Background

On August 31, 2009, Cumis filed a declaratory judgment action in Wisconsin state court against twenty-six credit unions, including Suffolk. The complaint in that action seeks a declaratory judgment that Cumis is not obligated to cover losses the credit unions sustained as a result of CU National's fraud.

In September of 2009, Cumis and Suffolk entered into a Tolling Agreement that, among other things, precluded the parties from taking any further action "to pursue or adjudicate coverage for the claims asserted in [Suffolk's] Notice of Loss," until the agreement expired on December 31, 2009. Pl. Decl., Ex. B. At the time the parties executed the Tolling Agreement, Suffolk was unaware of the fact that it had been named by Cumis as a defendant in the Wisconsin action.

On January 4, 2010, several days after the Tolling Agreement expired, Suffolk filed the instant lawsuit. Later that same day, Cumis served Suffolk with a copy of the complaint in the Wisconsin action.

On December 17, 2009, the Wisconsin action was removed from state court to the United States District Court for the Western District of Wisconsin. On January 20, 2010, Cumis filed a motion to remand the case to the Wisconsin state court. Several days later, Suffolk filed a motion to dismiss on the grounds that: (1) service of the complaint was untimely; and (2) the Wisconsin court was without personal jurisdiction.

Pursuant to a stipulation between the parties, the United States District Court for the Western District of Wisconsin remanded the case back to Wisconsin state court in March of 2010. Shortly thereafter, Suffolk renewed its motion to dismiss. After a delay in the briefing schedule designed to give Cumis an opportunity to mediate with other defendants, that motion is now fully briefed before the Wisconsin state court.

## II. DISCUSSION

### A. Legal Standard—*Colorado River* Abstention

 "The abstention doctrine comprises a few 'extraordinary and narrow exception[s]' to a federal court's duty to exercise its jurisdiction." *Woodford v. Cmty. Action Agency of Greene County, Inc.*, 239 F.3d 517, 522 (2d Cir.2001) (*Colorado River*, 424 U.S. at 813, 96 S.Ct. 1236). "Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236. However, "[u]nder the Colorado River exception the court may abstain in order to conserve federal judicial resources only in 'exceptional circumstances,' where the resolution of existing concurrent state-court litigation could result in 'comprehensive disposition of litigation.'" *Id.* at 813, 96 S.Ct. 1236.

 Before engaging in the analysis of whether to abstain under *Colorado River*, a court must decide if the concurrent state

and federal proceedings are parallel. *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir.1998). Cases are considered "parallel" when "the main issue in the case is the subject of already pending litigation." *GBA Contr. Corp. v. Fidelity & Deposit Co.*, No. 08 CV 5171, 2001 WL 11060, at *14 (S.D.N.Y. Apr. 23, 2001).

■ If the cases are parallel, courts consider a six-factor test to determine if abstention is appropriate under *Colorado River*: (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights. *Colorado River*, 424 U.S. at 818, 96 S.Ct. 1236; *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 22–27, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

■■ " 'No one factor is necessarily determinative,' " and " 'a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required.' " *Moses H. Cone*, 460 U.S. at 15–16, 103 S.Ct. 927 (quoting *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. 1236). However, the Supreme Court has cautioned that " '[o]nly the clearest of justifications will warrant dismissal.' " *Id.* at 16, 103 S.Ct. 927 (quoting *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. 1236) (emphasis in *Moses Cone* ). Thus, "[a]lthough the decision whether to abstain on Colorado River grounds is committed to the district court's discretion," *Woodford*, 239 F.3d at 523, the Court's analysis is "heavily weighted in favor of the exercise of jurisdiction." *Moses Cone*, 460 U.S. at 16, 103 S.Ct. 927.

**B. Analysis**

■ There is no serious question here that this case and the Wisconsin action are parallel, as the determinative issue in both cases is whether Cumis is bound by the parties' agreement to indemnify Suffolk for its losses. However, although the actions are parallel, the Court's analysis of the relevant factors reveals that abstention would not be appropriate.

**1. The Assumption of Jurisdiction by Either Court Over Res or Property**

This is not an in rem action and the case does not involve jurisdiction over property. The Second Circuit has held that "the absence of a res 'point[s] toward exercise of federal jurisdiction.' " *Village of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir.1999) (citing *DeCisneros v. Younger*, 871 F.2d 305, 307 (2d Cir.1989)). This factor therefore weighs against abstention.

**2. The Inconvenience of the Federal Forum**

Suffolk, a New–York based credit union, sustained its losses in New York. Not surprisingly, most of the witnesses and relevant documents are located in this State. CU National and McGrath, the architect of the alleged fraud, are located a short distance away in New Jersey. On the other hand, although Cumis is a Wisconsin-based company, it has hired New York-based counsel. Wisconsin has no other connection to this case. Accordingly, this factor clearly counsels against abstention.

**3. Whether a Stay or Dismissal Will Avoid Piecemeal Litigation**

There are six credit unions, including Suffolk, that remain as defendants in the

Wisconsin action. The credit unions were all allegedly defrauded by CU National and now seek indemnity from Cumis based on a standard fidelity bond. Cumis argues that if this action proceeds, instead of litigating similar claims against the credit unions all at once in the Wisconsin action, it will be forced to engage in piecemeal litigation. Cumis worries that the parallel actions may result in inconsistent adjudications.

The "primary context" in which federal courts abstain in order to avoid piecemeal litigation "has involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." *Woodford*, 239 F.3d at 524. Here, Cumis suggests that if the federal case is adjudicated first, depending upon the outcome, the other credit unions in the Wisconsin action would either attempt to use a favorable judgment against Cumis or argue that they were not bound by the unfavorable judgment because they were not parties to this case. This was precisely the problem that the Second Circuit discussed in *DeCisneros*, 871 F.2d at 308.

There, the District Court abstained under *Colorado River* because it feared a scenario in which the plaintiff would prove the defendant's liability in federal court "and then be able to use the judgment preclusively in state court-but that the inverse would not be true." *Id.* In other words, if the defendant "were relieved of liability in the federal action, state plaintiffs—such as [the plaintiff's] neighboring apartment dwellers—would not be bound by federal judgment because they would not have been parties to it." *Id.* In affirming the District Court, the Second Circuit observed that, under this scenario, "the defendant could face liability in two forums with the risk of inconsistent results ..." *Id.*

■ Nevertheless, although the Court agrees that this situation poses a *threat* of inconsistent results, this risk does not "outweigh the heavy presumption against abstention." *In re Asbestos Litig.*, 963 F.Supp. 247, 253 (S.D.N.Y.1997). Indeed, because "any case involving parallel proceedings presents a risk of duplicative litigation ... the existence of those risks can weigh only modestly in favor of dismissal; otherwise dismissals pursuant to Colorado River would be the rule, not the exception, in cases involving parallel proceedings in state and federal court." *Id.* (citing *King v. Hahn*, 885 F.Supp. 95, 98 (S.D.N.Y. 1995)). Thus, while this factor is important and does weigh in favor of abstention, it is not determinative.

### 4. The Order in Which Jurisdiction Was Obtained

■ This factor would seem at first blush to favor abstention because the Wisconsin state court action was filed in August of 2009, more than four months before the federal lawsuit. However, the priority factor of this balancing test should not simply "be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21, 103 S.Ct. 927. Here, although the Wisconsin action was filed first, both cases are still in the discovery phase. It is not obvious which case is further along in that process. However, it is well-established that "the facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it." *Woodford*, 239 F.3d at 522.

Moreover, the Court agrees with Suffolk that it is disingenuous in this case for Cumis to rely on the fact that it filed first in Wisconsin. Shortly after filing suit in Wisconsin, Cumis entered into the Tolling Agreement with Suffolk, which precluded

the parties from taking any further action "to pursue or adjudicate coverage for the claims asserted in [Suffolk's] Notice of Loss," until the agreement expired on December 31, 2009. Pl. Decl., Ex. B. Unbeknownst to Suffolk, at the time it executed the Tolling Agreement, Cumis had already named Suffolk as a defendant in the Wisconsin state court action. When the Tolling Agreement expired, Suffolk moved expeditiously in commencing this lawsuit on January 4, 2010.

Under these circumstances, where it is likely that Suffolk would have commenced this lawsuit long before January of 2010 if not for the Tolling Agreement, the fact that Cumis filed in Wisconsin four months earlier carries no weight in the Court's analysis.

### 5. Whether State or Federal Law Supplies the Rule of Decision

██ Cumis is correct that state law will provide the rule of decision on the merits. However, contrary to Cumis's argument, "the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex." *Village of Westfield,* 170 F.3d at 124 (citing *DeCisneros,* 871 F.2d at 308–309 and *Bethlehem Contracting Co. v. Lehrer/McGovern Inc.,* 800 F.2d 325, 327 (2d Cir.1986)). This case is not likely to present novel or complex issues.

Even if it does, it seems likely that New York law will govern whether Cumis is liable for Suffolk's losses under the terms of the parties' agreement because Suffolk is a New-York based company and "the state of the insured's principal place of business ... is ordinarily the controlling factor in determining the law applicable to a liability insurance policy." *Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.,* 36 A.D.3d 17, 22, 822 N.Y.S.2d 30 (1st Dep't 2006), *aff'd,* 9 N.Y.3d 928, 844 N.Y.S.2d 773, 876 N.E.2d 500 (2007) (quoting Restatement (Second) of Conflict of Laws § 193). Thus, although state and not federal law will govern the case, this Court presumably is in a better position than a Wisconsin court to apply the law of New York. Under the circumstances, this factor actually weighs against abstention.

### 6. Whether the Wisconsin Proceeding Will Protect Suffolk's Rights

Suffolk contends that its claims cannot be resolved in the Wisconsin action because the Wisconsin Court lacks personal jurisdiction. According to Suffolk, even if the Wisconsin court denies its motion to dismiss, the allegedly slow pace of that lawsuit will frustrate the prompt resolution of its claims.

The Court is not in a position to evaluate whether the Wisconsin court actually has personal jurisdiction over Suffolk and therefore assign great weight to this argument. If the Wisconsin court does have personal jurisdiction, there is little reason to think that its procedures are inadequate to protect Suffolk's rights. There is also no indication that the Wisconsin action is proceeding at an unusually slow pace. Indeed, to the extent that there has been a lack of progress in that case, the delay would appear to be attributable at least in part to the fact that Suffolk filed a jurisdictional motion that must be resolved before the case can proceed. Accordingly, this factor favors abstention.

The Court's analysis reflects that only two of the six relevant factors favor abstention in this case. The Court is mindful that the *Colorado River* analysis is more than a "mechanical checklist". *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. 927. However, on balance, it is clear that Cumis has failed to offer the type of exceptional circumstances that would convince the Court

to abdicate its "virtually unflagging obligation" to exercise jurisdiction over this case. *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236. Accordingly, Cumis's motion to dismiss or stay this action pursuant to the abstention doctrine enunciated in *Colorado River* is denied.

### III. CONCLUSION

For the foregoing reasons, Cumis's motion to dismiss or stay the proceedings pursuant to the abstention doctrine enunciated in *Colorado River* is denied.

SO ORDERED.