**ICBC STANDARD SECURITIES, INC., Plaintiff,**

v.

**Gonzalo Martin LUZURIAGA, Defendant.**

15–CV–5267(DAB)

United States District Court, S.D. New York.

Signed November 10, 2016

Jonathan Alfred Selva, Adam Dana Mitzner, Pavia & Harcourt LLP, New York, NY, for Plaintiff.

Joseph A. Demaria, Thomas Oppenheimer, Eric Bevan, Fox Rothschild LLP, Miami, FL, for Defendant.

## ORDER

Deborah A. Batts, United States District Judge:

On July 7, 2015, Plaintiff ICBC Standard Securities, Inc. ("ICBCSS" or "Plain-

tiff") filed suit against Defendant Gonzalo Martin Luzuriaga ("Luzuriaga" or "Defendant") seeking a declaratory judgment pursuant to 28 U.S.C. §§ 2201–02 (Declaratory Judgment Act or "DJA") that ICBCSS has no obligation to pay Luzuriaga any additional compensation (other than what it paid him while he was employed by ICBCSS), that "New York law governs the employment relationship between ICBCSS and Luzuriaga," and that "to the extent that Luzuriaga seeks any remedy against ICBCSS arising from his employment with ICBCSS and/or termination from employment, he can do so only in a court of competent jurisdiction in the United States." (Compl. ¶¶ 7, 28).

Defendant filed his Motion to Dismiss Plaintiff's Complaint with Prejudice Pursuant to Federal Rule of Civil Procedure 12(b)(1) on September 10, 2015 ("Def.'s MTD"), which Plaintiff opposed on September 24, 2015 ("Pl.'s Opp."). The Motion to Dismiss was fully submitted on October 1, 2015. Defendant attached Jorge Rodriguez Mancini's Declaration to his Motion to Dismiss ("Mancini Decl.") and Mancini's Reply Affidavit ("Mancini Aff.") to his Response. Plaintiff attached the Declarations of Suzanne Soleimani ("Soleimani Decl.") and Enrique A. Betemps ("Betemps Decl.") to its Opposition. Defendant also filed a Motion to Strike Request for Attorneys' Fees on September 10, 2015, which Plaintiff opposes. For the following reasons, Defendant's Motion to Dismiss is GRANTED.

## I. BACKGROUND

The dispute arises out of Defendant's employment with Industrial and Commercial Bank of China (Argentina) S.A. ("ICBC–Argentina") and ICBCSS between 2005 and 2012. Defendant was hired by Standard Bank Argentina S.A., which was eventually renamed ICBC–Argentina, as

the Head of Trading, on October 11, 2005. (Mancini Decl. ¶¶ 9, 11.) Defendant signed an Offer Letter and was transferred to ICBCSS in New York in February 2011. (Compl. ¶ 12; Mancini Decl. ¶¶ 13–14; Soleimani Decl. ¶ 3.) The Offer Letter states that "[Luzuriaga] will have continuous service from October 11, 2005." (Def.'s MTD, Ex. B, ¶ 1.) It also says that Defendant's employment with ICBCSS was at-will. (Id. ¶ 13.)

Plaintiff terminated Defendant's employment, allegedly for performance reasons, on April 30, 2012. (Compl. ¶ 18; Mancini Decl. ¶ 17; Soleimani Decl. ¶ 2.) Plaintiff claims that Defendant was not entitled to any severance payment because he was an employee-at-will (Pl.'s Opp. at 4; Soleimani Decl. ¶ 9), while Defendant claims that he did not receive certain payments he was owed under Argentine law. (Def.'s MTD at 3; Mancini Decl. ¶¶ 18–19.)

Throughout the time of Defendant's employment with both ICBC–Argentina and ICBCSS, the two organizations were members of the multi-national banking group Standard Banking of South Africa Limited, later Industrial and Commercial Bank of China. (Mancini Decl. ¶¶ 10, 12; Soleimani Decl. ¶ 18.) It is Defendant's position that, under Argentinian law, the two are members of the same economic group. (Id. ¶ 20.) Defendant contends that, under Argentine law, if an employee works outside of Argentina for the same group of companies, then Argentine employment law applies if most of the services are performed in Argentina. (Mancini Decl. ¶ 22.) It is Plaintiff's position that ICBCSS and ICBC–Argentina are separate legal entities. (Pl.'s Opp. at 5; Betemps Decl. ¶ 9(f); Soleimani Decl. ¶ 13.)

In November 2013, Defendant sued ICBCSS and ICBC–Argentina before the Argentine Labor Court for alleged violations of Argentine labor laws (the "Argen-

tine Litigation"), including failure to pay Defendant severance owed to him. (Betemps Decl. ¶ 6; Mancini Decl. ¶ 8.) Defendant served ICBCSS in the Argentine Litigation in April 2014. (Betemps Decl. ¶ 7.) ICBCSS has litigated the case in Argentina since August 2014 and has not challenged the jurisdiction of the Argentine Court. (Id. ¶ 8, 14.) It asserts that it has not challenged jurisdiction there because Argentine courts must assert jurisdiction over lawsuits where the plaintiff invokes Argentine law. (Id. ¶ 14.) It maintains that it has preserved jurisdictional defenses by claiming that New York law applies to the suit. (Id.) Defendant, by contrast, argues that, in Argentina, a defendant must assert jurisdictional defenses in response to a complaint filed or else they are deemed waived. (Mancini Decl. ¶ 28; Mancini Aff. ¶ 9.) Defendant agrees that Plaintiff can argue that New York law applies. (Mancini Decl. ¶ 19.)

In the instant action, filed on July 7, 2015, ICBCSS seeks declaratory judgment that it has no obligation to pay Luzuriaga any additional compensation; that New York laws govern the employment relationship between Luzuriaga and ICBCSS; and that Luzuriaga may only seek remedies against ICBCSS in a court of competent jurisdiction in the United States. (Compl. ¶ 28.) Additionally, ICBCSS asks the Court to require Luzuriaga to withdraw his claims against ICBCSS and permanently enjoin Luzuriaga from prosecuting the Argentine Litigation. (Id.)

## II. DISCUSSION

### A. Legal Standard for Motion to Dismiss Pursuant to Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule [of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. ... A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

In resolving a motion to dismiss pursuant to Rule 12(b)(1) motion, "the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." Fountain v. Karim, 838 F.3d 129, 134 (2d Cir. 2016) (quoting Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014)). A court may refer to "evidence outside of the pleadings, such as affidavits" in resolving "disputed jurisdictional fact issues" when deciding a Rule 12(b)(1) motion to dismiss. Id. at 134 (quoting Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000)).

Here, in addition to the Complaint, the Court considers Jorge Rodriguez Mancini's Declaration, attached to Defendant's Motion to Dismiss, Mancini's Reply Affidavit, and the Declarations of Suzanne Soleimani and Enrique A. Betemps, attached to Plaintiff's Opposition.

### B. Abstention under the Declaratory Judgment Act

The Declaratory Judgment Act states: "In a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added).

The Supreme Court has held that federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given to them" and that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." Colorado River

Water Conservation Dist. v. United States, 424 U.S. 800, 813, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). In the case of parallel proceedings in a state and federal court, "[a]bdication of the obligation to decide cases can be justified under [the doctrine of abstention] only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." Id. at 813, 96 S.Ct. 1236.

However, the Court has also held that "[d]istinct features of the [DJA] ... justify a standard vesting district courts with greater discretion in declaratory judgment actions than permitted under the 'exceptional circumstances' test of Colorado River." Wilton v. Seven Falls Co., 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). Noting the permissive language of the DJA, the Supreme Court has described it as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." Id. at 287, 115 S.Ct. 2137 (quoting Public Ser. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241, 73 S.Ct. 236, 97 L.Ed. 291 (1952)); see also Dow Jones & Co., Inc. v. Harrods Ltd., 346 F.3d 357, 359 (2d Cir. 2003) ("Dow Jones II") ("Courts have consistently interpreted this permissive language as a broad grant of discretion over a declaratory action that they would otherwise be empowered to hear.").

In Dow Jones II, the Second Circuit set forth a two-prong test "to guide the exercise of discretion in Declaratory Judgment Act cases." Dow Jones II, 346 F.3d at 359. First, the court asks "whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved," and second, "whether a judgment would finalize the controversy and offer relief from uncertainty." Id.[1] The Second Circuit also set forth three additional factors that may be considered in DJA cases:

(1) whether the proposed remedy is being used merely for "procedural fencing" or a "race to res judicata"; (2) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (3) whether there is a better or more effective remedy.

Id. 359–60. Recently, although the Second Circuit noted that Wilton abstention discretion is "not unfettered," it affirmed the application of these five factors in reviewing the exercise of discretion in a declaratory judgment action. Niagara Mohawk Power Corp., 673 F.3d at 105.[2]

---

1. Plaintiff contends that under Continental Casualty Co. v. Coastal Savings Bank, 977 F.2d 734 (2d Cir. 1992), "a court must entertain a declaratory judgment action" when either of these two factors is met. Id. at 737. Continental Casualty, however, was issued before the Supreme Court's ruling in Wilton. While Plaintiff is correct that district courts have applied the Continental Casualty test mandating jurisdiction when either of the two factors is met since Dow Jones and Wilton, they have also described these two prongs as factors to be weighed in considering whether to exercise jurisdiction. Compare Ace Arts, LLC v. Sony/ATV Music Pub., LLC, 56 F.Supp.3d 436, 446 (S.D.N.Y. 2014) with Ray Legal Consulting Grp. v. Gray, 37 F.Supp.3d 689, 700 (S.D.N.Y. 2014) ("courts should con-

sider"). The Second Circuit has not applied Continental Casualty's mandatory standard since its ruling in Dow Jones II. Most recently, in Niagara Mohawk Power Corp. v. Hudson River–Black River Regulating Dist., 673 F.3d 84 (2d Cir. 2012), it described the Dow Jones factors as "set of factors 'to guide the exercise of discretion in Declaratory Judgment Act cases.'" Id. at 105. Regardless of which standard applies, the Court holds that neither of the two Dow Jones factors have been met here.

2. In Niagara Mohawk Power Corp., the Second Circuit distinguished the facts of that case from Wilton because federal claims predominated over state law claims. Id. Here, however, Plaintiff has asserted no federal

Judge Koeltl set forth nine additional factors to evaluate in deciding "whether the question at issue in the federal suit 'can better be settled in the proceeding pending in the state court' ":

(1) the scope of the pending state proceeding and the nature of the defenses available there; (2) whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding; (3) whether the necessary parties have been joined; and (4) whether such parties are amenable to process in that proceeding[;] (5) avoiding duplicative proceedings; (6) avoiding forum shopping[;] (7) the relative convenience of the fora; (8) the order of filing; and (9) choice of law.

TIG Ins. Co. v. Fairchild Corp., No. 07 CIV. 8250 (JGK), 2008 WL 2198087, at \*2–3 (S.D.N.Y. May 27, 2008) (citations and alterations omitted).

█ A court exercising discretion to abstain under Wilton may either stay or dismiss the action. Wilton, 515 U.S. at 288 n.2, 115 S.Ct. 2137. A stay is generally preferable to preserve any of the plaintiff's claims that might not be resolved by the pending parallel proceedings. Id.; TIG, 2008 WL 2198087 at \*5. However, where the entirety of a plaintiff's claim constitutes a defense in the parallel action, there is no danger that the plaintiff will be prejudiced by dismissal. TIG, 2008 WL 2198087 at \*5.

### 1. The Court Abstains from Exercising Jurisdiction in This Case.

█ Defendant argues that courts have broad discretion under the Declaratory Judgment "to reject jurisdiction over a claim for declaratory relief" and that the

Dow Jones factors weigh in favor of abstention. (Def.'s MTD at 5, 8–11.) Plaintiff, by contrast, advocates for less discretion as to abstention and asserts that a declaratory judgment here will serve a useful purpose and finalize the controversy. (Pl.'s Opp. at 9–16.)

Because the instant action was brought pursuant to the Declaratory Judgment Act, the Wilton framework for abstention, rather than the Colorado River "exceptional circumstances" test, applies. Furthermore, Plaintiff seeks only declaratory judgment and no additional relief or damages. The Court has discretion as to whether to exercise jurisdiction in this case and applies the Dow Jones test in deciding whether to abstain.

In Dow Jones & Co. v. Harrods, Ltd., 237 F.Supp.2d 394 (S.D.N.Y. 2002), aff'd, 346 F.3d 357 (2d Cir. 2003) ("Dow Jones I"), the Court considered these two Dow Jones factors together. Id. at 432–37. In that case, Dow Jones sought to preclude defendants Harrods and Al Fayed from pursuing a defamation claim in a United Kingdom court. Dow Jones II, 346 F.3d at 358. Dow Jones filed suit in this Court on May 24, 2002 seeking declaratory judgment, and Harrods brought suit against Dow Jones in the U.K. on May 29, 2002. Id. at 358–59. Al Fayed was not a party to the U.K. case. Id. The Court ruled that issuing a declaratory judgment would not necessarily resolve the controversy between the parties, noting that its "exercise of jurisdiction would spur more litigation," undermine judicial comity, and fail to guarantee that the British courts would recognize its decision. Dow Jones I, 237 F.Supp.2d at 437–38. In holding that the

cause of action. (See Compl. ¶ 8 (asserting diversity, rather than subject matter, jurisdiction).) The Second Circuit also wrote that " 'Wilton does not apply' where, as here, a plaintiff does not 'seek purely declaratory re-

lief.' " Id. at 106 (quoting Vill. of Westfield v. Welch's, 170 F.3d 116, 124 n.5 (2d Cir. 1999)). In this case, Plaintiff seeks only declaratory relief.

exercise of jurisdiction would serve no useful purpose, the Court wrote:

> Just as much as this Court may preemptively declare a foreign judgment based on repugnant legal principles to have no effect in the United States and enjoin parties from proceeding overseas, a foreign tribunal may just as cavalierly ignore this Court's order and command the parties to proceed with their litigation there.

Id. at 439.

Here, as in Dow Jones, a declaratory judgment will not finalize the controversy, offer relief from uncertainty, or serve a useful purpose in settling the legal issues involved in the employment dispute between the Parties. Although Plaintiff asserts that a declaratory judgment here will allow a New York corporation to adjudicate a New York employment dispute under New York law (Pl.'s Opp. at 9), the Argentine Court might consider this dispute as between two companies of the same economic group and an Argentine national, subject to Argentine labor law.[3] Furthermore, the Argentine Court could apply New York law if it decides New York rather than Argentine law applies. It might also ignore any declaratory judgment issued by this Court, leading to more litigation, in Argentina and in this Court. There is no guarantee that the declaration Plaintiff seeks would do anything to finalize the employment dispute at issue here. For the same reason, a judgment here will not necessarily serve a useful purpose.

Additionally, the remaining Dow Jones factors favor abstention in this case. First, each party contends that the other is engaged in forum shopping. (Def.'s MTD at 9; Pl.'s Opp. at 13.) While at first glance it may seem that Defendant engaged in fo-

rum shopping by filing suit against ICBCSS in Argentina, there is arguably a basis in Argentine law for his claims. Moreover, the Offer Letter does not specify that New York law will apply. (See Def.'s MTD, Ex. B.) More importantly, Defendant instituted the Argentine Litigation in November 2013, and Plaintiff has litigated there since August 2014. Plaintiff did not file the instant action until July 2015. Although the fact that Luzuriaga filed in Argentina first is not dispositive, see Dow Jones I, 237 F.Supp.2d at 440, the Court considers it relevant. Plaintiff has not supplied an explanation for its lengthy delay between the beginning of its participation in the Argentine Litigation and its pursuit of declaratory judgment from this Court. Accordingly, the Court infers that any forum shopping in this case is on the part of Plaintiff.

Second, issuing a judgment in this case could also increase friction between the American and Argentine legal systems. The considerations discussed with respect to the first two prongs of the Dow Jones test are again relevant here, and the Court again gives weight to the fact that the Argentine Litigation was pending for over a year and a half before the instant case was filed. The Argentine Court should have the opportunity to make its own decision without this Court "looking over its proverbial shoulder." Id. at 441.

 Lastly, the Argentine Court can provide an adequate alternative remedy. The Court relies primarily on the doctrine of international comity in making this determination. International comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due

---

3. The Court declines to decide any choice of law issue at hand in this case at this time. A choice of law determination does not weigh on its decision under Section II.B or II.C here.

regard both to international duty and convenience." <u>Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.</u>, 466 F.3d 88, 92 (2d Cir. 2006) (quoting <u>Hilton v. Guyot</u>, 159 U.S. 113, 163–64, 16 S.Ct. 139, 40 L.Ed. 95 (1895)).[4] This doctrine "counsels that absent exceptional circumstances, a federal court in the exercise of its discretion should decline to assert jurisdiction and defer to the corresponding interests and laws of foreign tribunal adjudicating related disputes in proceedings involving the same parties over which they have proper jurisdiction." <u>Dow Jones I</u>, 237 F.Supp.2d at 444.[5] Furthermore, "[n]otions of comity come into play with heightened sensitivity in cases where, as here, injunctive relief is sought to bar a litigant from pursuing an action in the courts of a foreign jurisdiction." <u>Id.</u> In this case, Plaintiff seeks only injunctive relief—relief that would effectively act as an injunction on the Argentine Court. The Argentine Court is competent to make a ruling as to choice of law and Plaintiff's defenses in the Argentine Litigation.

▆▆▆ Because all five <u>Dow Jones</u> factors weigh in favor of abstention, the Court need not analyze the nine factors set forth in <u>TIG</u>. The Court, however, notes that ICBC–Argentina is not a party to the instant action. If Argentine law applies in this case, the Court would not be able to render complete relief because ICBCSS and ICBC–Argentina may be jointly and severally liable under Argentine law, making ICBC–Argentina a necessary party to this action.

In choosing to abstain here, the Court may either stay or dismiss the action. Although a stay is generally preferable, the entirety of Plaintiff's claim in this action constitutes a defense in the Argentine Litigation. Plaintiff can argue in Argentina that New York law applies, that it is not subject to the jurisdiction of the Argentine Court, and that it owes Defendant no severance pay. Thus, there is no danger that Plaintiff will be unfairly prejudiced by a dismissal pursuant to Rule 12(b)(1).

### C. Anti–Suit Injunction

▆▆▆ In the alternative, the Court denies Plaintiff's request for an anti-suit injunction. The Second Circuit set forth its test for determining whether to enjoin foreign litigation in <u>China Trade & Development Corp. v. M.V. Choong Yong</u>, 837 F.2d 33 (2d Cir. 1987). The Court cautioned that "because such an order effectively restricts the jurisdiction of a foreign sovereign, ... an anti-foreign-suit injunction should be 'used sparingly.'" <u>Id.</u> at 35–36 (quoting <u>United States v. Davis</u>, 767 F.2d 1025, 1038 (2d Cir. 1985)).[6]

▆▆▆ Under <u>China Trade</u>, there are two threshold conditions for enjoining foreign litigation: "(1) the parties must be the same in both matters, and (2) resolution of the case before the enjoining court must be dispositive of the action to be enjoined."

---

4. Plaintiff cites <u>Royal & Sun</u> for the proposition that "The mere existence of parallel foreign proceedings does not negate the district courts' 'virtually unflagging obligation to exercise the jurisdiction given them.'" <u>Id.</u> at 92 (quoting Colorado River, 424 U.S. at 817, 96 S.Ct. 1236) (alteration omitted). Like Colorado River, however, <u>Royal & Sun</u> did not involve a declaratory judgment action. The Court's decision here does not rely exclusively on international comity principles, but such principles weigh in favor of abstention here.

5. Plaintiff contends that it is not subject to jurisdiction in Argentina. It can make this argument in the Argentine Litigation if it has not waived this defense, and the Argentine Court can dismiss the claims against Plaintiff if jurisdiction is not proper.

6. The Court notes that this consideration is intimately tied with principles of international comity, discussed above.

Id. at 35; see also Paramedics Electro-medicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 652 (2d Cir. 2004). If these threshold conditions are met, then a court must consider five additional factors:

> (1) frustration of a policy in the enjoin-ing forum; (2) the foreign action would be vexatious; (3) a threat to the issuing court's in rem or quasi in rem jurisdic-tion; (4) the proceedings in the other forum prejudice other equitable consid-erations; or (5) adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsis-tency, or a race to judgment.

China Trade, 837 F.2d at 35 (quoting American Home Assurance Corp. v. The Ins. Corp. of Ireland, Ltd., 603 F.Supp. 636, 643 (S.D.N.Y. 1984)).

### 1. The Court Denies Plaintiff's Request for an Anti–Suit Injunction.

In this case, ICBCSS cannot meet the two threshold conditions of China Trade. First, there is an additional party in the Argentine Litigation, ICBC–Argentina, so the parties are not the same in both mat-ters. For that reason, resolution of this case would not be dispositive of the Argen-tine Litigation. Issuing an injunction in this case would only resolve Luzuriaga's claims against ICBCSS and not his claims against ICBC–Argentina. Furthermore, in the event that ICBCSS and ICBC–Argen-tina are jointly and severally liable to Lu-zuriaga, the Argentine Litigation would not afford him full compensation if the Court issued an anti-suit injunction here.

Because the two threshold conditions are not met, the Court need not address the remaining China Trade factors, and it denies Plaintiff's request for an anti-suit injunction.

### III. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED. Defen-dant's Motion to Strike Request for Attor-ney's Fees is mooted by the dismissal. The Clerk is directed to close the Docket in this case.

SO ORDERED.